UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


PALEOS & KRIEGER, P.C.,          §
                                 §
        Plaintiff                §
                                 §    Civil Action No. 000384-RBW
v.                               §
                                 §
PORSCHE CARS NORTH AMERICA       §
and                              §
AMERIPRISE HOME and AUTO         §
INSURANCE                        §
                                 §
        Defendants               §


DEFENDANT AMERIPRISE'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS, OR
ALTERNATIVELY FOR SUMMARY JUDGMENT OR TO TRANSFER


In Count IV of the Complaint, Plaintiff Paleos & Krieger, P.C. has sued

"Ameriprise Home and Auto Insurance."[1]  This diversity action concerns a March 5,

2003 fire wherein a Porsche motor vehicle was damaged.  (Compl., ¶7).  Although the

Complaint is silent on the location of the fire, on information and belief, it occurred in

Rockville, Maryland.  On information and belief, Mr. Krieger is a Maryland resident.  On

information and belief, Maryland police and/or fire officials responded to the scene.  The

vehicle was towed by a Maryland tow company to a Maryland tow yard.  While the

---

[1]  This is not the proper name of the insurer.  Its proper name is AMEX Assurance Company.  (See,
**Exhibit No. 1**).  Hereinafter, this defendant will be referred to as AMEX.  The other three counts of the
Complaint do not relate to this defendant.

Complaint alleges that AMEX "retains" custody of the vehicle (Compl., ¶10), this is not accurate. On information and belief, the vehicle was returned to Mr. Krieger's residence in Silver Spring, Maryland by a Maryland tow company. The witnesses who would attest to this are in Maryland.

Notwithstanding the above, an overriding legal issue, as outlined below, is the "jurisdictional amount" issue. Should the court agree that it does not have subject matter jurisdiction, then it is submitted that the other issues raised herein may not be necessary for the court to address. Accordingly, the bases for this motion are presented with the "jurisdictional amount" at the fore, in practical recognition of the need for judicial economy in terms of the court's time and resources.

## STANDARD OF REVIEW

### A.    Invoking Party Must Prove Subject Matter Jurisdiction

The party invoking the jurisdiction of a federal court carries the burden of proving its existence. *St. Paul Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed 845 (1938). While the amount claimed on the face of the complaint ordinarily controls the amount in controversy in a diversity action, the Supreme Court in *St. Paul* recognized that where the evidence shows, to a legal certainty, that the damages never could exceed the jurisdictional minimum such that the claim was essentially feigned (colorable in order to confer jurisdiction, the action must be dismissed. 303U.S. at 288-290, 58 S. Ct. at 288-

290, 58 S. Ct. at 590-91; see also, *Coventry Sewage Associate v. Dworkin Realty Co.,* 71, F. 3d 1, (1st Cir. 1995).[2]

**B.    Rule 12 Motion to Dismiss, or Alternatively for Summary Judgment**

Courts have an affirmative obligation to dismiss a complaint that does not satisfy pleading requirements. *See, Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2006). Dismissing a complaint that does not demonstrate that the claimant has a valid claim serves the interests of judicial economy and excuses the parties from incurring the expense of having to present and defend a meritless claim.

Likewise, it is not enough that a complaint alleges a mere possibility of relief. The United States Supreme Court recently held that a complaint must allege facts demonstrating "entitlement to relief", beyond the mere "possibility" of relief. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). *Twombly* was a class action antitrust action alleging illegal conspiracy in the Baby Bells to inhibit the growth of third-party competitors. In reversing the Second Circuit, the Supreme Court significantly re-defined the standard to be applied under the federal rules in determining whether a complaint states a claim upon which relief can be granted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. …Factual allegations must be

---

[2] The rationale behind such dismissals is the fact that the intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. *St. Paul,* 303 U. S. at 288.

> enough to raise a right to relief above the speculative level…,
> on the assumption that all the allegations in the complaint are
> true (even if doubtful in fact).  …

127 S.Ct. at 1965 (citations omitted). [3]

Under *Twombly,* pleading a possibility of recovery is not enough.  The complaint itself must furnish factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." 127 S.Ct. 1966 (internal quotations omitted).  For example, complaint that alleges two equal possibilities for the defendant's behavior -- one of which is actionable and one of which is not -- fails to state a claim upon which relief can be granted and should be dismissed.

Applying these standards to the allegations of the complaint before this court, it falls woefully short of setting forth facts establishing a cause of action and should be dismissed.

In addition, when deciding a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a court considers only the pleadings. Where the parties present matters outside of the pleadings and the court considers those matters the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(d). It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex*

---

[3] For years, the Federal courts have followed the standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In *Twombly,* the court decided that "this famous observation has earned its retirement."  127 S.Ct. at 1969.

*Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual

issues "that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,*

477 U.S. at 250. The moving party bears the burden of showing that there is no genuine

issue as to any material fact and that he is entitled to judgment as a matter of law. *See*

Fed.R.Civ.P. 56(c).

When considering a motion for summary judgment, the court must construe the

facts alleged in the light most favorable to the party opposing the motion. *See United*

*States v. Diebold,* 369 U.S. 654, 655 (1962). Additionally, the court must construe the

facts alleged in the light most favorable to the party opposing the motion. *See United*

*States v. Diebold,* 369 U.S. 654, 655 (1962). A party who bears the burden of proof on a

particular claim must factually support each element of his or her claim. "[A] complete

failure of proof concerning an essential element necessarily renders all other facts

immaterial." Celotex Corp., 477 U.S. at 323. Thus, as to those issues on which the

nonmoving party will have the burden of proof, it is his responsibility to confront the

motion for summary judgment with an affidavit or other similar evidence in order to show

the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 256; *Celotex Corp.,* 477

U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's

position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.,* 108

F.3d 529, 536 (4th Cir. 1997). There must be "sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249-50.

## FACTUAL BACKGROUND

The Complaint at Count IV alleges breach of contract. No contract is attached to

the Complaint. Attached hereto as **Exhibit 1** is the contract of insurance between AMEX

Assurance Company (AMEX), and P. Jamie Krieger and Roy W. Krieger.[4]  The policy is a

Maryland automobile policy, issued to the Kriegers in Maryland pursuant to Maryland's

compulsory law concerning automobile insurance policies.  Among the specific policy

provisions pertinent to the issues which are the subject of this motion, are the following:

> **"Your obligations in the event of an auto accident or loss**
> \*      \*      \*      \*      \*
> **7.** Provide any written proofs of loss we require." (See, **Exh. 1**, p. 1)

The insuring agreement clause in the policy expressly provides:

> **"Agreement**
>
> We agree with you, in return for your payment of premium and your
> compliance with the obligations listed above, to insure you subject to
> the terms of this policy." (**Exh. 1**, pg. 1)

---

[4] AMEX has no policy of insurance with the corporate plaintiff in this action, "Paleos & Krieger, P.C."

The policy further provides:

> **"Suit against us**
>
> We may not be sued unless there is full compliance with all the terms of this policy.**" (Exh. 1**, pg. 8)

The "Car Damage" section of the policy (Part IV) provides:

> **"Limits of Liability**
>
> Our limit of liability for loss shall not exceed:
>
> 1. The lesser of :
>    a) the actual cash value of the stolen or damaged property; or
>    b) the amount necessary to repair or replace the property.
>    *      *      *      *      *
> 3. $200 for loss to personal effects arising out of the occurrence.
>
> An adjustment for depreciation and physical condition will be made in determining the actual cash value at the time of loss." **(Exh. 1**, pg. 7).

In accordance with the express provision of the policy requiring its insured to fully comply with all the terms of the policy, AXEX requested Roy Krieger in writing on eight separate occasions over the course of nine months during 2005 to provide it with written proof of loss in the form of a sworn and notarized Affidavit of Fire in connection with the March 5, 2005 occurrence. Attached hereto at **Exhibit 2** are copies of eight such letters bearing dates of March 8, 2005, June 22, 2005, July 19, 2005, August 19, 2005 September 14, 2005, October 13, 2005, November 13, 2005 and December 7, 2005, as well as a copy of the requested Affidavit of Fire form. In the letter dated December 7, 2005, Mr. Krieger was advised that if he did not respond and provide the proof of loss as requested by

December 30, 2005 that his claim would be closed without payment. Mr. Krieger never returned the completed, notarized Affidavit of Fire to AMEX. (See, the Affidavit of Timothy J. Reichwald, Esq. attached at **Exhibit 3**).

In addition, following the March 5, 2005 occurrence, AMEX arranged to have the subject automobile appraised in order to assess its level of damage. Attached is a copy of that March 7, 2005 appraisal stating, in pertinent part, that the actual cash value of the vehicle at that time was $52,000.00 and that the preliminary estimate of the cost to repair the vehicle was $20,719.07. (See, **Exhibit 4**). The records of the Maryland Motor Vehicle Administration reveal that the subject vehicle was purchased in Maryland on December 31, 2003 for $62,499, exclusive of taxes which were remitted according to the statement signed by Roy Krieger under penalty of perjury. (See, **Exhibit 5**, Application for Certificate of Title).

## ANALYSIS

**1.    This court does not have subject matter jurisdiction.**

Defendant challenges the plaintiff's claim that the amount in controversy is sufficient to invoke the subject matter jurisdiction of this court. (Compl. ¶1 and at the "Wherefore" clause to Count IV). As demonstrated herein, it is legally certain that the complaint herein does not meet the jurisdictional amount requirements of 28 USC § 1332 and Fed.R.Civ.P. 12 (b)(1). Pursuant to Rule 12 (h)(3), the court must dismiss this action.

The purchase price of the subject vehicle in 2003 was $62,499. Its actual cash value at the time of the March 3, 2005 fire has been appraised at $50,000, and the preliminary appraisal of the cost of repair totaled $20,719.07. The express terms of the insurance contract limited to $200 any damages for loss of personal effects. Accordingly, and to a legal certainty, the maximum amount recoverable under AMEX's policy of insurance is $50,200, even assuming *arguendo* that the vehicle was not repairable and that coverage exists. Plaintiff's claim of damages for the vehicle and its contents as amounting to "in excess of $75,000," where the undisputed facts are that the subject vehicle which was purchased a year and two months before the fire for $62,499, demonstrates that plaintiff's jurisdictional amount allegation is at best colorable. In summary, plaintiff cannot demonstrate that this court has subject matter jurisdiction. It is submitted that, to a legal certainty, plaintiff's attempt to invoke the jurisdiction of the federal courts fails and this action should be dismissed. *St. Paul Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); see, *Lamb v. Amalgamated Labor Life Ins. Co.,* 602 F. 2d 155 (8th Cir. 1979) (district court did not err in finding it lacked subject matter jurisdiction since maximum possible recovery under insurance policy was less than amount required for federal court jurisdiction, notwithstanding insured's claim it was entitled to more than jurisdictional amount.); see also, *Doucet v. Traveler Ins. Co.,* 362 F 2d. 263 (5th Cir. 1966) (affirming dismissal for lack of jurisdiction where policy limits less than amount claimed.)

Accordingly, for the reasons outlined herein this court should dismiss this action as this court lacks subject matter jurisdiction.

> **2. No cause of action has been stated because the plaintiff corporation has no contract with AMEX.**

As **Exhibit 1** demonstrates, AMEX's Maryland policy of insurance was with P. Jamie Krieger and Roy W. Krieger. AMEX had no policy of insurance with Paleos and Krieger, P.C., the District of Columbia corporate plaintiff in this action. Because there is no contract between the parties, Count IV of the complaint alleging breach of contract fails.

The subject automobile was titled in the name of Paleos & Krieger, P.C. when it was purchased in 2003. **(Exhibit 5)**. The law recognizes that an insurable interest in the insured property must exist both at the time a contract of insurance is entered into and at the time of loss, otherwise the policy of insurance is void. See, *Technical Land, Inc., v. Firemen's Ins. Co. of Washington, D.C.,* 756 A. 2d 439, 444 (D.C. 2000). In the instant matter, even if Mr. Krieger by reason of any ownership interest he may have had in Paleos and Krieger, P.C. had some insurable interest in the subject automobile owned by the corporation, Mr. Krieger is not a party to this action. Rather, the party plaintiff is a corporation which has no interest in the policy issued to the Kriegers. Because the plaintiff corporation has no contract with AMEX, the plaintiff corporation's claim of breach of contract fails as a matter of law.

For the reasons outlined herein, Count IV of the complaint fails as a matter of law.

3. **Even if there is a policy of insurance providing coverage to Paleos & Krieger, P.C., it has been materially breached by Mr. Krieger who failed to comply with the policy terms, and defendant is entitled to judgment as a matter of law.**

Over the course of nine months following the March 3, 2005 occurrence, and despite eight separate letters requesting a proof of loss from Mr. Krieger in the form of a notarized Affidavit of Fire, Mr. Krieger failed to comply. He failed and refused to provide with the requested Affidavit of Fire. (See, **Exh. 2**) The policy contract required the production of a written proof of loss, and compliance with the terms of the policy. (See, **Exh. 1**) Mr. Krieger did neither. The policy conditioned the filing of a suit against AMEX on compliance with the contract. This provision has been disregarded.

The policy is question was delivered in Maryland, pursuant to Maryland's compulsory automobile insurance statute. It is submitted that the policy should be construed under Maryland law. As the Maryland Court of Appeals has explained, the "construction of insurance policies is governed by a few well-established principles." *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383,388,488 A.2d 480, 488 (1985). When deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself, *Bausch & Lomb v. Utica Mutual*, 330 Md. 212, 695 A.2d 1021, 1031 (1993), unless a statute, regulation or public policy is violated thereby. *Pacific Indemnity v. Interstate Fire & Cas. Co., supra; Litz v. State Farm*, 346 Md. 212, 695 A.2d 566, 569 (1997); *Kendall v. Nationwide*, 348 Md. 157, 702 A.2d 767, 771 (1997).

The primary purpose in construing an insurance contract is to effectuate the intention of the parties. *Schuler v. Erie Ins. Exch., et al.*, 81 Md. App. 499, 505, 568 A.2d 873 (1990). In conducting an analysis of the intent of the parties, however, the intent should be found, if reasonably possible, from the language of the policy as a whole, and accordingly emphasis should not be placed on any particular policy provision. *Kendall v. Nationwide*, 702 A.2d at 771; *Cheney v. Bell National Life*, 315 Md. 761, 766, 556 A.2d 1135, 1136 (1989); *see also, Simkins Indus. Inc. V. Lexington Ins. Co.,* 42 Md. App. 396, 401 A.2d 181, *cert. denied*, 285 Md. 730 (1979).

In performing this construction of an insurance policy, a court should analyze "the plain language of the contract according to its words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them." *Kendall*, 702 A.2d at 771; *Simkins Industries*, 42 Md. App. 396, 405, 401 A.2d 181, 186. A court may construe unambiguous contract language as a matter of law. *Kendall v. Nationwide*, 702 A.2d at 773, citing *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. at 389, 488 A.2d at 489.

In applying the above rules of construction to the policy at issue here, the plain language of the policy placed an affirmative obligation upon the insured to provide the insurer with a written proof of loss. The insurer time and again over nine months, with eight separate letters, requested the written proof of loss. The policy also specifically required that all provisions of the policy be complied with by the insured before suit could be brought against the insurer by the insured. It is submitted that in all respects, the

insured breached these material terms of the policy. The effect of material breach by the insured is to excuse performance by the insurer. *Hartford Ins. Co. v. Himelfarb*, 355 Md. 671, 736 A.2d 295 (1999).

The importance and purpose of the proof of loss has been described in *GEICO v. Harvey*, 278 Md. 548, 366 A.2d 13, 17 (1976) as follows:

> "A proof of loss enables the insurer to ascertain the nature, extent and character of the loss and to set reserves accordingly. *Empire State Ins. Co. v. Guerriero*, 193 Md. 506, 69 A.2d 259 (1949). The chief purpose of a proof of loss 'is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability.' *Fire Ins. Co. v. Merrick,* 171 Md. 476, 489, 190 A. 335, 341 (1937). The insurer's right to a proof of loss, where required by the policy, has been characterized as 'an important one to the insurer, and one in which it is to be protected.' *Automobile Ins. Co. v. Thomas,* 153 Md. 253, 261, 138 A. 33, 37 (1927). See also *Appleman, Insurance Law and Practice s 3481 et seq. (1970); 8 Blashfield, Automobile Law and Practice s 331.5 (1966).*

The decisional law interpreting policies of insurance draws distinctions between policy language which creates, on the one hand, conditions precedent to coverage and language which on the other hand is determined to constitute a covenant by an insured. A covenant requires substantial performance by the insured, whereas a condition precedent must be performed by the insured before any obligation on the part of the insurer arises. See, *GEICO v. Harvey,* supra (condition precedent) and *Hartford Fire Ins. Co. v. Himelfarb*, 355 Md. 671, 736 A.2d 295 (1999) (covenants by the insured).

It is submitted that the plain language of the AMEX policy requiring the insured to submit a proof of loss, particularly when coupled with the further policy language making

full compliance with the policy a prerequisite before suit may be filed against the insured, demonstrate that the that the AMEX policy language at issue here constitutes conditions precedent to any obligation by AMEX. The requested proof of loss here was not simply a mere requirement of "notice" of a loss. Rather, the proof of loss requirement obligated the insured to provide specific detailed information, under oath, as set forth in the Affidavit of Fire form attached at *Exhibit 1*. (See the attached Affidavit of Fire, attached in **Exh. 1** to the March 5, 2005 correspondence to Mr. Krieger).

In *Hartford Fire Ins. Co. v. Himelfarb, supra*, the Maryland Court of Appeals addressed the standard to be applied even where the policy language is considered a covenant, where the issue was whether the insured complied with his contractual duty to provide a proof of loss. Quoting with approval from *Mutual Fire Ins. Co. v. Pickett*, 117 MD. 638, 83 A. 1097 (1912) the court noted:

> "The object of the condition of the policy in question is to protect the insurer, by requiring the insured to produce the means by which the insurance company can test the accuracy of the proof of loss furnished by him. It does not exact from the insured anything unreasonable or impossible, and until he can show that he has complied with a demand to furnish bills of purchase, or duplicates thereof, or that it was not possible for him to do so by the use of all reasonable means within his power, he can not maintain an action on the policy, unless the insurance company has waived its demand."

*Id.* at 643-44, 83 A. at 1099.

In summary, the law of Maryland which governs AMEX's Maryland insurance contract is that where the insured has completely failed to provide a proof of loss to the insurer, the carrier is excused from any obligation under the policy, and this is so whether

the policy's language is a condition precedent to coverage or a covenant by the insured. *Hartford Ins. Co. v. Himelfarb*, 355 Md. at 690; *Mutual Fire Ins. Co. v. Pickett, supra*.

Here, Mr. Krieger had a duty to and yet failed to: (1) furnish the insurer with information reasonably requested, which was reasonably possible for him to provide; and (2) respond to the insurer's eight letters over nine months imploring Mr. Krieger to provide the requested information. Mr. Krieger ignored the insurer's requests, and offered no justification, or any attempted excuse for failing to provide the reasonably requested proof of loss documentation. Instead, he flaunted the policy; he flaunted the insurer's correspondence. He flaunted his obligations. He did not substantially perform. He cannot as a matter of law demonstrate that the can meet his burden to prove either (1) or (2) above, which is required in order to demonstrate substantial performance and to meet his obligations under the policy. See *Hartford v. Himelfarb*, 355 Md. at 691; *Mut. Fire Ins. Co. v. Pickett*, 117 Md. 638, 83 A. 2d 1097 (1912).

In conclusion, because Mr. Krieger has failed to meet his obligations under the policy and, even viewing the policy language at issue as a covenant and not a condition precedent, there has been no substantial performance by Mr. Krieger and thus no action on the policy may be maintained.

For all the reasons outlined above, the court should grant defendant's motion to dismiss, or in the alternative enter summary judgment in favor of this defendant.

4.    **In all events, venue is not convenient in this forum, and if this matter is not dismissed as a matter of law then it should be transferred to Maryland.**

Where federal jurisdiction is premised solely on diversity, 28 U.S.C. § 1391 (a) controls venue and establishes that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 S.C. § 1391(a).

Here, there is a district in which the action may otherwise be brought, e.g., the District of Maryland, where all the significant events which are the subject of this claim occurred.  Thus, § 1391(a)(3) points toward Maryland as the proper jurisdiction. Moreover, in an action where venue is proper, 28 U.S.C. § 1404(a) nonetheless authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a).

In all events, venue is not convenient in this forum, and if this matter is not dismissed as a matter of law then it should be transferred to Maryland. Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 22,27 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622

(1964)). Under this statute, the moving party bears the burden of establishing that transfer is proper. *Trout Unlimited Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996).

Accordingly, the defendant must make two showings to justify transfer. First, that the plaintiff originally could have brought the action in the proposed transferee district. *Van Dusen,* 376 U.S. at 622. Second, that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited,* 944 F. Supp. at 16. As to the second showing, the statute calls on the court to weigh a number of case-specific private and public-interest factors. *Stewart Org.,* 487 U.S. at 29.

The private-interest considerations include: (1) the plaintiffs choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited,* 944 F. Supp. at 16 (citing *Jumara v. State Farm Ins. Co.,* 55 FJd 873, 879 (3d Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.,* 713 F. Supp. 1125, 1129 (N.D. Ill. 1989); 15 Fed. Prac. & Proc. § 3848).

The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.*

     **a.**     **The private interests favor transfer**[5]

---

[5] For transfer to be proper, the defendant must first establish that the action could have been brought in the proposed transferee district. *Van Dusen,* 376 U.S. at 622. The defendant asserts that venue is proper in the District of Maryland; because complete diversity exists, 28 U.S.C. § 1332; and because Maryland's

The fact that nonparty witnesses reside in Maryland weighs in favor of transfer. 15 Fed. Prac. & Proc. § 3851 (noting that "courts weigh more heavily the residence of important nonparty witnesses, who may be within the subpoena power of one district but not the other"). Many, if not all sources of relevant records concerning the occurrence and its aftermath are located in Maryland. Accordingly, both the convenience of the witnesses and the ease of access to sources of proof both weigh in favor of transfer even though some Maryland witnesses may be within this Court's subpoena power. Although this consideration alone may not be enough to overcome the plaintiffs' choice of forum, *See Piper Aircraft*, 454 U.S. at 255 (stating that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome when the private and public interest factors clearly point towards trial in the alternative forum"), it is enough here because the District has no meaningful ties to the controversy, because the insurance policy was issued in Maryland, and because Mr. Krieger resides in Maryland. *Lentz v. Eli Lilly Co.*, 464 F. Supp. 2d 35, 38 (D.D.C. 2006). The operative facts giving rise to the plaintiff's claim arose in Maryland. These circumstances coupled with the defendant's choice of forum, asserted before the parties have engaged in any discovery, support the conclusion that the private interest factors favor transfer. *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 129 (D.D.C. 2008) (opining that "[i]f the defendant had interposed its motion earlier in the litigation process, more of the equities would tilt to transfer").

---

long-arm statute extends to insurance contracts executed or to be performed in Maryland and to torts allegedly committed in Maryland. *Anno. Code of Md., Courts and Judicial Proc. Art. § 6-103(3) and (6).*

**b.**    **The public interests favor transfer**

Defendant contends that Maryland has a strong interest in seeing that the insurance claims of Maryland citizens involving Maryland insurance policies are tried fairly and effectively in Maryland.   Furthermore, under the District of Columbia choice of law provisions, Maryland law is likely to apply, and there is no reason that the District of Maryland cannot adequately resolve this case.  "There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947).  While this court has familiarity with insurance policy litigation, that fact does not counterbalance this interest; accordingly, this factor points toward Maryland.  The District, while its contacts with this case are not "legally insignificant," *Mahoney*, 545 F. Supp. 2d at 127, does not derive as great an interest from those contacts as Maryland does from its interest in redressing the harms of its citizens, *see Ingram v. Eli Lilly & Co.*, 251 F. Supp. 2d 1, 13-14 (D.D.C. 2003) (determining the District had no "strong interest in this case as a local controversy because neither plaintiff nor her mother are currently residents" of the District).  Indeed, the AMEX policy is with Mr. Krieger, a Maryland resident, and not with Paleos & Krieger, LLC, a District of Columbia corporation.  Thus, this factor favors transfer to Maryland as well.

In terms of the relative congestion of the courts, it is submitted that this District has a more congested docket than the District of Maryland.  Thus, this factor shades to

transfer.  On balance, both the private and the public interest factors and the interests of justice support transferring the case to the District of Maryland.  For all these reasons, this action should be transferred to Maryland in the event that the dispositive motions herein are not granted.

## CONCLUSION

For the reasons set forth above, this court should dismiss this action as to this Defendant as the amount in controversy fails to meet the required jurisdictional amount.  Alternatively, the court should dismiss this action as to this defendant (or enter summary judgment on its behalf) on the grounds set forth above which demonstrate that Plaintiff Paleos & Krieger, P.C. has failed to set forth a claim upon which relief can be granted or alternatively is not entitled to judgment as a matter of law as there is no genuine dispute as to any material fact.  In the alternative, the court should transfer this action to the District of Maryland where this action could have been brought and which is a more convenient forum.

Respectfully submitted,

BRAULT GRAHAM, LLC


By: ____/s/Daniel L. Shea_____
        Daniel L. Shea
        101 South Washington Street
        Rockville, Maryland  20850
        (301) 424-1060
        Attorneys for AMEX Assurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of July 2008, a copy of the foregoing was

mailed, first class mail, postage prepaid, to:

Roy W. Krieger, Esquire
Paleos & Kreiger, P.C.
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C.  20036
*Attorneys for Plaintiff*

Porsche Cars North America
980 Hammond Drive
Suite 1000
Atlanta, GA  30328
*Co-Defendant*

_____/s/Daniel L. Shea_____
Daniel L. Shea, Esquire

*EXHIBIT NO. 1*



**Ameriprise**
*Auto & Home Insurance*

3500 Packerland Drive
De Pere, WI 54115-9070

**Ameriprise
Insurance Company
IDS Property Casualty
Insurance Company**

STATE OF WISCONSIN)
                )SS
BROWN COUNTY      )

       Glenn A. Sell, being first duly sworn on oath, deposes and says

that he is Underwriting Manager of AMEX Assurance Company and as

such has had the records checked of said company as to insurance issued

to P Jamie Krieger & Roy W Krieger 10362 Castlehedge Ter Silver

Spring, MD 20902-5808, that the attached copy is a true and exact copy of

the policy abstract to the best of our knowledge, showing the coverage and

their limits of said original policy **AX00221732** of **3/5/2005.**

_____

Glenn A Sell
Underwriting Manager .

Subscribed and sworn to before me
this *12* day of *March* ,
200*5*, at Green Bay, Brown County, WI.

_____
Notary Public, Brown County, WI
My commission expires _____ *9-11-11*

*T.gas*

**AMEX Assurance Company**
3500 Packerland Drive
De Pere, WI 54115-9070

**AMENDED DECLARATION**
POLICY CHANGE OF EFFECTIVE DATE IS 11/01/2004

MARYLAND
POLICY NUMBER: **AX00221732**
POLICY PERIOD:   **11/01/2004 - 05/01/2005**
                 12:01 AM Standard Time

LAPSE IN COVERAGE:

P Jamie Krieger
Roy W Krieger
10362 Castlehedge Ter
Silver Spring, MD 20902-5808

**FOR CLAIMS SERVICE CALL:**
(800) 872-5246
**FOR CLIENT SERVICE CALL:**
(800) 535-2001

| **CARS WE INSURE** | 2  1998  SATUR<br>SATURN | 5  2002  MAZDA<br>TRIBUTE | 7  2004  PORSC<br>CAYENNE |
|---|---|---|---|
| **COVERAGE/LIMIT** | | | |
| **BODILY INJURY LIABILITY** | $120.00 | $151.00 | $142.00 |
| $100,000 EACH PERSON | | | |
| $300,000 EACH ACCIDENT | | | |
| **PROPERTY DAMAGE LIABILITY** | INCL | INCL | INCL |
| $100,000 EACH ACCIDENT | | | |
| **PERSONAL INJURY PROTECTION** | $17.00 | $22.00 | $20.00 |
| $2,500 EACH PERSON | | | |
| **UNINSURED MOTORISTS** | | | |
| BODILY INJURY | $28.00 | $28.00 | $28.00 |
| $100,000 EACH PERSON | | | |
| $300,000 EACH ACCIDENT | | | |
| UNINSURED MOTORISTS PROPERTY DAMAGE | $4.00 | $4.00 | $4.00 |
| $100,000 EACH ACCIDENT | | | |
| $250 DEDUCTIBLE | | | |
| **CAR DAMAGE** | | | |
| **COLLISION (COV. D-1)** | $60.00 | $127.00 | $226.00 |
| DEDUCTIBLES CAR 2-$500 5-$500 7-$500 | | | |
| **OTHER THAN COLLISION (COV. D-2)** | $17.00 | $42.00 | $81.00 |
| DEDUCTIBLES CAR 2-$250 5-$250 7-$250 | | | |
| **TOWING AND LABOR COSTS** | $4.00 | $4.00 | $4.00 |
| $75 PER DISABLEMENT | | | |
| **RENTAL EXPENSE** | $11.00 | $11.00 | $11.00 |
| $20 PER DAY/$600 PER OCCURRENCE | | | |
| **TOTAL SEMIANNUAL PREMIUM PER CAR** | $261.00 | $389.00 | $516.00 |

**TOTAL SEMIANNUAL PREMIUM ALL CARS -   $1,166.00**

Coverage is provided only when both a premium and limit are shown.

Maryland law requires us to inform you of the following:

- A surcharge may not be imposed on the policyowner for any claim or payment made pursuant to the Personal Injury Protection provided.
- Claims history is considered for purposes of canceling or refusing to renew the policy.
- The registration plates must be returned to the Motor Vehicle Administration on or before the date the insurance policy expires or is canceled; and
- Failure to return the registration plates may result in an uninsured motorist penalty fine which is assessed at a rate of $150 for the first 30 days and is increased by $7 each day thereafter until the insurance is replaced or the registration plates are returned.  The Uninsured Motorist Penalty Fine is assessed per vehicle.



ad0456

## DRIVER INFORMATION

| | |
|---|---|
| 1. P Jamie Krieger | 4. |
| 2. Roy W Krieger | 5. |
| 3. | 6. |

\* QUALIFIES FOR GOOD STUDENT DISCOUNT

\+ QUALIFIES FOR DEFENSIVE DRIVER DISCOUNT

\# EXCLUDED DRIVER

| CAR INFORMATION | | | | CARS KEPT AT LOCATION OTHER THAN RESIDENCE |
|---|---|---|---|---|
| 1998 | SATUR | 1982KS273WZ168786 | 9151 | |
| 2002 | MAZDA | 4F2CU08112KM27712 | 9131 | |
| 2004 | PORSC | WP1AB29P54LA70221 | 9151 | |

## YOUR POLICY HAS THE FOLLOWING DISCOUNTS:

MULTI-CAR

1998 SATUR - DUAL AIRBAG, ABS, 6 YR ACCD FREE
2002 MAZDA - DUAL AIRBAG, ABS, 6 YR ACCD FREE
2004 PORSC - DUAL AIRBAG, ABS

## YOUR POLICY HAS THE FOLLOWING ENDORSEMENTS:

AMENDATORY ENDORSEMENT
SPECIAL EQUIPMENT/CUSTOMIZATION: NONE

MEXICAN COLLISION COVERAGE

## LIENHOLDER INFORMATION

**AMEX Assurance Company**
1400 Lombardi Avenue
Green Bay, Wisconsin 54304-3922

*This endorsement changes the policy. Please read it carefully.*

# Amendment Of Policy Provisions - Maryland

## Part IV - Car Damage

**Additional Payments**

Provision #1 has been amended as follows:

**We** will pay for transportation costs if **your insured car** covered by this Part is stolen. Transportation costs shall not exceed $20 per day. The payment period begins 48 hours after **you** tell **us** of the theft and notify the police. The period ends when:

a)  **we** pay the loss;

b)  the car is returned to use; or

c)  **we** have paid $600; whichever occurs first.

## Part VI - Reimbursement of Auto Rental Expense

The last paragraph of this section is amended as follows:

**We** will pay up to $20 per day up to that period of time reasonably required to repair or replace the car; but no more than $600 maximum. This coverage does not pay for any mileage charges.

# Your Safety Pays Car Policy

## Maryland



21456 (10/95)

# Your Policy at a Glance

Your Obligations In The Event Of An Auto Accident Or Loss ...................................................................... 1

Agreement ...................................................................................................................................................... 1

Definitions Used Throughout This Policy ...................................................................................................... 1

Part I - Liability ............................................................................................................................................. 1
    Coverage A - Liability Coverage ............................................................................................................ 1
    Additional definitions used in this part only ......................................................................................... 1
    Additional payments ............................................................................................................................... 2
    Exclusions ................................................................................................................................................ 2
    Conformity with state financial responsibility laws .............................................................................. 2
    Out-of-state insurance ............................................................................................................................ 2
    Limits of liability .................................................................................................................................... 2
    Separate application of this insurance ................................................................................................... 3
    Other insurance ...................................................................................................................................... 3

Part II - Personal Injury Protection Coverage ............................................................................................. 3
    Coverage B - Personal Injury Protection Coverage .............................................................................. 3
    Exclusions ................................................................................................................................................ 3
    Additional definitions used in this part only ......................................................................................... 3
    Limits of Liability ................................................................................................................................... 3
    Conditions ............................................................................................................................................... 3

Part III - Uninsured Motorists Coverage ..................................................................................................... 4
    Coverage C - Uninsured Motorists Coverage ....................................................................................... 4
    Additional definitions used in this part only ......................................................................................... 4
    Exclusions ................................................................................................................................................ 5
    Limits of liability .................................................................................................................................... 5
    Conditions ............................................................................................................................................... 5
    Other Insurance ...................................................................................................................................... 6
    Arbitration .............................................................................................................................................. 6
    Additional Duty ...................................................................................................................................... 6
    Our right to recover payment ................................................................................................................ 6

Part IV - Car Damage ................................................................................................................................... 6
    Coverage D - Car Damage Coverage .................................................................................................... 6
    Loss settlement ....................................................................................................................................... 6
    Additional definitions used in this part only ......................................................................................... 6
    Additional Payments .............................................................................................................................. 6
    Exclusions ................................................................................................................................................ 7
    Mexican collision coverage ..................................................................................................................... 7
    Limits of liability .................................................................................................................................... 7
    Appraisal ................................................................................................................................................. 7
    No benefit to bailee ................................................................................................................................ 7
    Other insurance ...................................................................................................................................... 7

Part V - Towing And Labor Costs ................................................................................................................. 7
    Coverage E - Towing And Labor Costs Coverage ................................................................................ 7

Part VI - Reimbursement Of Auto Rental Expense ...................................................................................... 7
    Coverage F - Reimbursement of Auto Rental Expense ......................................................................... 7

Part VII - General Provisions ....................................................................................................................... 8
    Policy period, territory ........................................................................................................................... 8
    Premium .................................................................................................................................................. 8
    Changes .................................................................................................................................................. 8
    Two or more cars insured ...................................................................................................................... 8
    Suit Against Us ....................................................................................................................................... 8

**Our recovery rights** ........................................................................................................... 8
**Assignment** ........................................................................................................................ 8
**Bankruptcy** ........................................................................................................................ 8
**Fraud** .................................................................................................................................. 8
**Cancellation of this policy** .............................................................................................. 8
**Nonrenewal of this policy** ............................................................................................... 8
**Automatic Termination** ................................................................................................... 8
**Other Provisions** .............................................................................................................. 8

**Part VIII - Endorsements** ...................................................................................................... 9
**Extended Liability Coverage** ........................................................................................... 9
**Insurance For Sound Receiving Or Transmitting Equipment** ...................................... 9

Includes copyrighted material of AMEX Assurance Company and IDS Property Casualty
Insurance Company, 1996; and also includes copyrighted material of Insurance Services Office,
Inc, with its permission. Copyright, Insurance Services Office, Inc., 1994

Please read this policy carefully.
It's a contract between you and us.

# Your Obligations In The Event Of An Auto Accident Or Loss

1. Notify us promptly. The notice must give the time, place and circumstances of the accident or loss, including the names and addresses of injured persons and witnesses.

2. Cooperate with us and help us in any matter concerning a claim or suit. No obligations shall be assumed, expenses incurred or voluntary payments made by an **insured person** except at that person's own cost.

3. Send us promptly any legal papers received relating to a claim or suit.

4. Submit to physical examinations at **our** expense by doctors **we** choose as often as **we** may reasonably require.

5. Answer questions under oath when asked by anyone **we** name, as often as **we** reasonably ask, and sign copies of the answers.

6. Authorize us to obtain medical and other records.

7. Provide any written proofs of loss **we** require.

A person claiming Uninsured Motorists Coverage must notify the police within a reasonable amount of time of the accident if a hit-and-run driver is involved. Promptly send us copies of the legal papers if a suit is brought.

In addition, a person or organization claiming Car Damage Coverage must:

1. Take reasonable steps after loss to protect the car and its equipment from further loss. **We** will pay reasonable expenses incurred in providing that protection.

2. **We** may require that you file with **us** a sworn proof of loss within a reasonable amount of time after the accident.

3. Promptly report the theft of the car or its equipment to the police.

4. Allow us to inspect and appraise the damaged car before its repair or disposal.

## Agreement

**We** agree with you, in return for **your** payment of premium and **your** compliance with the obligations listed above, to insure **you** subject to the terms of this policy.

**We** will insure you for the coverages and limits of liability for which a premium is shown in the declarations of this policy.

## Definitions Used Throughout This Policy

The terms defined below appear in bold type throughout this policy.

**We, us** and **our** means AMEX Assurance Company.

**You** and **your** means the Policyholder named in the declarations and spouse if living in the same household.

**Bodily injury** means bodily harm, sickness or disease, including death that results. It doesn't include any punitive or exemplary damages.

**Property damage** means damage to tangible property, including loss of its use. It doesn't include any punitive or exemplary damages.

**Private passenger car** means a four-wheel car of the private passenger type.

**Auto business** means the business or occupation of selling, repairing, servicing, storing or parking cars.

**Relative** means a person living in **your** household who intends to continue to live there, and related to **you** by blood, marriage or adoption, including a ward or foster child.

**Occupying** means in, on, entering into or alighting from.

**Car** means a land **motor vehicle** with at least four (4) wheels designed for use on public roads.

**Utility car** means a **car**, not used in the business or occupation of farming or ranching, with a rated load capacity of 2,000 pounds or less of the pick-up, van or panel truck type.

**Trailer** means a vehicle designed to be towed by a **private passenger car** and includes a farm wagon or farm implement while towed by a **private passenger car** or **utility car**. This doesn't include a **trailer** used as an office, store, display or passenger **trailer**.

**State** means the District of Columbia, any **state**, territory or possession of the United States, and any province of Canada.

**Your insured car** means:

a.) The car described in the declarations.

b) A **trailer** you own when attached to **your insured car**.

c) A car **you** acquire during the policy period if:

   (i)  it replaces the car described in the declarations;
   (ii)  we insure all private passenger or **utility cars** owned by **you** on the date of **your** acquisition of the car and you notify **us** within 30 days after the date of acquisition of **your** election to make this and no other policy issued by **us** applicable to the car and you pay any additional premium.

d) A car or **trailer** not owned by **you** being temporarily used as a substitute for a vehicle described in this definition, because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction.

## Part I - Liability

### Coverage A - Liability Coverage

**We** will pay damages for which an **insured person** is legally liable because of **bodily injury or property damage** resulting from the ownership, maintenance or use of a car or **trailer**. The **bodily injury or property damage** must not be expected nor intended from the standpoint of the **insured person.**

**We** will defend any suit or settle any claim for damages as **we** think appropriate. **We** will not defend or settle after **our** limit of liability has been tendered.

### Additional definitions used in this part only

As used in this Part, **insured person** means:

1. **you** or a **relative**.

2. A person using **your insured car**.



3. Any other person or organization with respect only to legal liability for acts or omissions of:

   a) a person covered under this Part while using **your insured car**; or
   b) **you** or a **rela**tive covered under this Part while using a car or **trailer** other than **your insured car** if the car or **trailer** is not owned or hired by that person or organization.

No person shall be considered an **insured person** if that person uses a vehicle without a reasonable belief of having permission to use the vehicle.

## Additional payments

We will pay, in addition to **our** limit of liability:

1. All costs we incur in the settlement of a claim or defense of a suit.

2. All costs assessed against **you** in **our** defense of a suit.

3. Interest on damages awarded in a suit **we** defend accruing after judgment is entered and before **we** have paid, offered to pay, or deposited in court that portion of the judgment which is not more than **our** limit of liability.

4. Premiums on appeal and attachment bonds required in a suit **we** defend. **We** will not pay the premium for an attachment bond that is more than **our** limit of liability. **We** have no duty to apply for or furnish bonds.

5. Up to $300 for a bail bond required due to an accident related traffic law violation resulting in **bodily injury** or **property damage** covered by this Part. **We** have no duty to apply for or furnish a bond.

6. Loss of earnings up to $100 a day, but not other income, when **we** ask **you** to help **us** investigate or defend any claim or suit.

7. Expenses incurred for immediate medical and surgical treatment to others necessary at the time of an occurrence because of **bodily injury** covered by this Part.

8. Any other reasonable expenses incurred at **our** request.

## Exclusions

We do not cover:

1. **Bodily injury or property damage** resulting from the ownership, maintenance or use of a vehicle when used to carry persons or property for a charge. This exclusion does not apply to shared-expense car pools or to any policyholder who is registered under Part V of Title 5, Subtitle 5 of the Family Law Article as a Family Day Care Home Provider. A maximum **bodily injury** limit of $20,000 per person and $40,000 per occurrence is available as required under 17-103 of the Transportation Article for coverage for liability as a result of **bodily injury** to a Family Day Care child while a passenger in an automobile arising out of the insured's activities as a Family Day Care Provider. The Family Day Care Home Provider Auto **Bodily Injury** Coverage must be requested in writing by the insured and acknowledged in writing by AMEX Assurance Company with a future effective date on which the coverage will become effective.

2. **Bodily injury** or **property damage** for which a person is an insured under a nuclear energy liability insurance policy. This exclusion applies even if the limits of that policy are exhausted.

3. **Bodily injury** to an employee of an **insured person** arising in the course of employment by an **insured person**. Coverage does apply to a domestic employee unless benefits are payable or are required to be provided for that employee under a workers' compensation law.

4. **Bodily injury or property damage** resulting from **auto business** operations. Coverage does apply for **you**, a **relative**, or anyone associated with or employed by **you** or a **relative** with respect to the operation of **your insured car** in the auto business.

5. **Bodily injury or property damage** resulting from the ownership, maintenance or use of a vehicle except a **private passenger** car by a person employed or otherwise engaged in a business other than the **auto business**.

6. **Property damage** to property owned or being transported by an **insured person**.

7. **Property damage** to property rented to, or in charge of, an **insured person** except a residence or private garage.

8. **Bodily injury or property damage** resulting from the ownership, maintenance or use of a motorized vehicle with fewer than four (4) wheels.

9. **Bodily injury or property damage** resulting from the ownership, maintenance or use of a vehicle, other than **your insured car**, which is owned by or furnished or available for regular use by **you** or a **relative**.

10. **Bodily injury** to **you** or a **relative** to the extent that the limit of coverage is in excess of the financial responsibility limit.

11. **Bodily injury or property damage** resulting from the operation of a vehicle:

    a) operated on rails or crawler treads.
    b) which is a farm type tractor or equipment designed for use principally off public roads, while not on public roads.
    c) located for use as a residence or premises.
    d) not designed for use primarily on public highways.

12. **Bodily injury or property damage** which may reasonably be expected to result from the intentional act of an **insured person** or which are in fact intended by an **insured person**.

13. For liability assumed by an **insured person** under any contract or agreement.

## Conformity with state financial responsibility laws

When **we** certify this policy as proof under a **state** financial responsibility law, it will comply with that law to the extent of the coverage and limits of liability required by that law.

## Out-of-state insurance

If an **insured person** becomes subject to the financial responsibility law or the compulsory insurance law or similar laws of another state because of the ownership, maintenance or use of **your insured car** in that state, we will interpret this policy to provide any broader coverage required by those laws. Any broader coverage so afforded shall be reduced to the extent that other auto liability insurance applies. No person, may, in any event, collect more than once for the same elements of loss.

## Limits of liability

The limits of liability shown in the declarations apply subject to the following:

1. The **bodily injury** liability limit for "each person" is the maximum **we** will pay as damages for **bodily injury**, including damages for care and loss of services, to one person in one occurrence.

2. Subject to the **bodily injury** liability for "each person", the **bodily injury** liability limit for "each occurrence" is the maximum **we** will pay as damages for **bodily injury**, including damages for care and loss of services, to two or more persons in one occurrence.

3. The **property damage** liability limit for "each occurrence" is the maximum **we** will pay for all damages to property in one occurrence.



All bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

We will pay no more than these maximums regardless of the number of vehicles described in the declarations, insured persons, claims, claimants, policies, or vehicles involved in the occurrence. Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the Uninsured Motorists Coverage of this policy.

### Separate application of this insurance

This insurance applies separately to each insured person against whom a claim is made or suit is brought, except with respect to the limits of our liability.

### Other insurance

If there is other applicable auto liability insurance on a loss covered by this Part, we will pay our proportionate share as our limits of liability bear to the total of all applicable liability limits. Insurance afforded under this Part for a vehicle you do not own, is excess over any other collectible auto liability insurance.

-------------------------------------------------------------------

# Part II - Personal Injury Protection Coverage

-------------------------------------------------------------------

### Coverage B - Personal Injury Protection Coverage

We will pay the following benefits for loss and expense incurred because of bodily injury caused by accident and involving a motor vehicle:

a)    medical expense benefits to or on behalf of each injured person;

b)    income continuation benefits to or on behalf of each injured person who at the time of the accident was an income producer;

c)    essential services benefits to or on behalf of each injured person who at the time of the accident was not an income producer.

### Exclusions

This insurance does not apply to bodily injury sustained by a person:

a)    who intentionally causes the motor vehicle accident; or

b)    while operating or voluntarily riding in a motor vehicle known by that person to be stolen; or

c)    while in the commission of a felony or fleeing or attempting to elude a police office; or

d)    arising out of the ownership, maintenance, or use of a motorcycle or motorbike, by that person.

### Additional definitions used in this part only

essential services benefits means reimbursement for necessary and reasonable payments made to others, not members of the injured person's household, incurred within three years from the date of the accident for essential services ordinarily performed by the injured person, for care and maintenance of the family of that person or family household. We will pay essential services only if, at the time of the accident, the insured person was not in an occupational status where he was earning or producing income. Essential services do not include expenses for services obtained from any relative.

funeral services means funeral, burial, or cremation services.

income means wages, salary, tips, commissions, professional fees, and other earnings from businesses or farms owned individually or jointly or in partnership with others, and to the extent that any earnings are paid or payable in property or services other than cash, income means the reasonable value of the property or services.

income continuation benefits means payment for 85% of loss of gross income incurred during the lifetime of the insured person and within three years from the date of the accident. We will pay income continuation only if, at the time of the accident, the insured person was in an occupational status where he was earning or producing income.

income producer means a person who at the time of the accident was in an occupational status earning or producing income.

injured person means:

a)    you or a relative who sustains bodily injury in a motor vehicle accident;

b)    any other person who sustains bodily injury (1) while occupying the insured motor vehicle as a guest or passenger, or (2) while using the insured motor vehicle with your consent express or implied or (3) while a pedestrian through being struck by the insured motor vehicle.

insured motor vehicle means a motor vehicle of which you are the owner, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged.

medical expense benefits means payment for all reasonable expenses arising from the accident and incurred within three years from the date of the accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, and professional nursing services and funeral services.

motor vehicle means an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power.

pedestrian means a person not occupying a motor vehicle, including an individual in, on, or alighting from any other vehicle operated by animal or muscular power, or on or alighting from an animal.

relative means a person related to you by blood, marriage or adoption who is a resident of the same household and who intends to continue to live there, and includes your unmarried and unemancipated children, while away from your household attending school or while in military service.

### Limits of Liability

Regardless of the number of persons insured, policies or bonds applicable, claims made, or insured motor vehicles to which this insurance applies, our liability for personal injury protection benefits is limited as follows:

1.    The total aggregate amount payable by us to or on behalf of any one person who sustains bodily injury in any one motor vehicle accident shall not exceed the limits of liability stated in the declarations of the policy or the greater of $2,500 for medical expense benefits, income continuation benefits and essential services benefits.

2.    Benefits payable by us under the terms of this insurance to or on behalf of an injured person shall be reduced to the extent that benefits are paid to or on behalf of the injured person under any workmen's compensation law of any state or the Federal Government.

### Conditions

This insurance is subject to the following additional conditions:

1.    Notice. In the event of an accident, written notice containing details sufficient to identify the injured persons, and also reasonably obtainable information respecting the time, place, and circumstances of



3

the accident shall be given by or on behalf of each **injured person** to **us** or any of **our** authorized agents as soon as practicable.

2. **Action Against Us**. No action shall lie against **us** unless there shall have been full compliance with all the terms of this provision.

3. **Medical Reports; Proof of Claim**. As soon as practicable, within a period not to exceed 12 months after the date of the accident, the **injured person**, or someone on behalf of that person shall submit to **us** written proof of claim including full particulars of the nature and extent of the injuries and treatment received and contemplated and such other information as may assist **us** in determining the amount due and payable. If benefits for loss of wages or salary (or in the case of the self-employed, their equivalent) are claimed, the person presenting the claim shall authorize **us** to obtain details of all wage or salary payments or their equivalent, paid to that person by any employer or earned by that person since the time of the **bodily injury** or during the year immediately preceding the date of the accident. The **injured person** shall submit to mental or physical examinations by physicians selected by **us** and at **our** expense when and as often as **we** may reasonably require, and that person, or in the event of the death or incapacity of that person, the legal representative of that person shall upon request by **us** execute authorization to enable **us** to obtain medical reports and copies of records.

   Proof of claim shall be submitted to **us**. The person making claim shall submit to examination under oath by any person named by **us** as often as reasonably required.

   If a lapse occurs in the period of disability or medical treatment of an **injured person** who has received benefits under this insurance and that person subsequently claims a recurrence of the **bodily injury** for which the original claim was made, that **injured person** or someone on behalf of that person shall be required to submit to **us** reasonable medical proof of the recurrence.

4. **Prompt Payment of Claims**. Payments of personal injury protection benefits shall be made promptly and within 30 days after satisfactory proof of claim has been submitted to **us**.

5. **Other Insurance**. With respect to **you** or a **relative** sustaining **bodily injury** while occupying, or while a **pedestrian** through being struck by a **motor vehicle** not insured as required under Article 48A, Section 539 and 541 of the Maryland Code:

   a) If there is no other available personal injury protection coverage with respect to the **bodily injury**, the benefits payable for the coverage under this policy with respect to the **bodily injury** shall be reduced to the extent of any medical or disability benefits coverage applicable to the **motor vehicle** and collectible from the insurer of the **motor vehicle**;

   b) If there is other personal injury protection coverage available with respect to the **bodily injury**, the aggregate maximum amount payable under this and all other policies as personal injury protection benefits shall not exceed the highest applicable limit of liability for the coverage under any one of the policies, provided that the aggregate maximum amount shall be reduced to the extent of any medical or disability benefits coverage applicable to the **motor vehicle** and collectible from the insurer of the **motor vehicle**. This reduction shall not be applicable to benefits paid or payable under any uninsured motorists coverage or by the Maryland Unsatisfied Claim and Judgment fund. We shall not be liable under this policy for a greater proportion of the benefits than the applicable limit of liability stated in this policy bears to the sum of the applicable limits of liability for the coverage under this policy and the other policies.

   It is further agreed that any automobile medical payments insurance afforded under this policy shall be excess insurance over any **medical expense benefits** paid or payable under this or any other automobile insurance policy because of **bodily injury** to an **injured person**.

---

# Part III - Uninsured Motorists Coverage

---

## Coverage C - Uninsured Motorists Coverage

**We** will pay damages for **bodily injury** and **property damage** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle or underinsured motor vehicle**. Bodily injury must be caused by accident and result from the ownership, maintenance or use of the vehicle.

Determination whether an **insured person** is legally entitled to recover damages or the amount of damages shall be made by agreement between that person and **us**. We will pay under this coverage only if:

1. The limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between you and the insurer of the vehicle described in the definition of **underinsured motor vehicle** and **we**:

   a) have been given prompt written notice of such tentative settlement by certified mail;

   b) have sent **you** a written refusal to consent to acceptance of the settlement offer within 60 days after receipt of the notification; and

   c) advance payment to **you** in an amount equal to the tentative settlement offer within 30 days after the written refusal to consent to acceptance of the settlement offer.

If suit is brought to determine legal liability or damages without **our** written consent, **we** are not bound by the resulting judgment.

## Additional definitions used in this part only

As used in this Part:

**Insured person** means:

a) **you** or a **relative**.

b) Any other person occupying **your insured car**.

c) Any person for damages that person is entitled to recover because of **bodily injury** to **you**, a **relative**, or another occupant of **your insured car**.

No person shall be considered an **insured person** if that person uses a vehicle without a reasonable belief of having permission to use the vehicle.

**Uninsured car** means a **car** which is:

a) not insured by a **bodily injury** liability bond or policy at the time of the accident either by cash, securities or a liability bond;

b) insured by a liability bond or policy at the time of the accident but the insuring company denies coverage or is or becomes insolvent;

c) insured by a liability bond or policy at the time of the accident, but its limit for liability is less than the minimum limit specified by the financial responsibility law of Maryland;

d) insured by a liability bond or policy for **bodily injury** at the time of the accident in limits equal to or greater than the limit specified by the financial responsibility law of Maryland, but its limit for **bodily injury** liability is:

   (i) less than the limit of liability for this coverage; or



4

(ii) reduced by payments to others injured in the accident to less than the limit of liability for this coverage.

e) a vehicle whose operator or driver is unknown and causes an accident resulting in bodily injury or property damage without hitting or a hit-and-run vehicle whose operator or owner is unknown and which strikes:

(i) you or a relative;

(ii) a vehicle which you or a relative are occupying; or

(iii) your insured car;

and all reasonable efforts have been made to ascertain the whereabouts of the owner or operator, or both, of the car in order to obtain personal service and all reasonable efforts have been made to ascertain whether the car was insured or uninsured.

f) insured by a bodily injury liability bond or policy at the time of the accident but the insurer denies coverage or is or becomes insolvent.

Uninsured car does not mean a vehicle:

a) owned by you or a resident relative, or furnished, or available, for you or your relatives regular use;

b) owned or operated by a self-insurer as contemplated by a financial responsibility law, motor carrier law, or similar law;

c) owned by a governmental unit or agency;

d) operated on rails or crawler treads;

e) designed mainly for use off public roads while not on public roads; or

f) while located for use as a residence or premises.

Underinsured car means a car insured by a liability policy or bond at the time of the accident which provides bodily injury liability limits less than the limit of liability for this coverage or has been reduced by payment to other persons for claims arising from the same occurrence to an amount less than the limit of liability provided for under this coverage. It does not include a vehicle:

a) which is insured by a liability policy or bond at the time of the accident, but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your insured car is principally garaged;

b) owned by you or a resident relative, or furnished, or available, for you or your relatives regular use;

c) owned by a governmental unit or agency;

d) owned or operated by a self-insurer as contemplated by any financial responsibility law, motor carrier law, or similar law;

e) which is insured by a liability policy or bond at the time of the accident, but the insuring or bonding company denies coverage or is or becomes insolvent;

f) operated on rails or crawler treads;

g) designed mainly for use off public roads while not on public roads; or

h) while located for use as a residence or premises.

## Exclusions

We do not cover bodily injury or property damage sustained by an insured person:

1. Occupying, or struck by, a car owned by you or a relative for which insurance is not afforded under this Part;

2. If that person or the legal representative of that person makes a settlement without our written consent;

3. Occupying your insured car when used to carry persons or property for a charge. This exclusion does not apply to shared-expense car pools;

4. Who intentionally causes the accident resulting in the injury;

5. Injured while operating or voluntarily riding in a car known by that person to be stolen;

6. Injured while in the commission of a felony or fleeing or attempting to elude a police officer;

7. Occupying, or struck by, a car owned by that person which is not insured for Uninsured Motorists Coverage under this policy;

8. If the property is contained in or struck by a car other than your insured car which is owned by that person; or

9. Who is a pedestrian injured in an accident outside of Maryland who is not a resident of Maryland.

This coverage shall not apply to the benefit of any insurer or self-insurer under any workers' compensation law, disability benefits law or similar law.

## Limits of Liability

The limits of liability shown in the declarations apply, subject to the following:

1. The limit for each person is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person in one accident.

2. Subject to the limit for "each person", the limit for "each accident" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to two or more persons in one accident.

3. The property damage liability limit for "each accident" is the maximum we will pay for property damage in one accident, less the applicable $250 deductible.

We will pay no more than these maximums regardless of the number of vehicles described in the declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident.

Amounts payable will be reduced by:

1. A payment made by the owner or operator of the uninsured car or underinsured car or organization which may be legally liable;

2. A payment under the Liability Coverage of this policy;

3. A payment made or amount payable because of the bodily injury under any workers' compensation law, disability benefits law or similar law; and

4. A payment under any property insurance policy.

We will pay Underinsured Motorist Coverage only after the limits of liability under any applicable bodily injury liability policies or bonds have been exhausted by payment of judgments or settlements.

Payment will not be made under both Uninsured Motorists and Underinsured Motorist Coverages for the same occurrence.

## Conditions

The eligible injured person will:

1. submit to a statement under oath if required by us;



5

2.  submit to physical examinations by physicians selected by us when and as often as we may reasonably require. A copy of the medical report will be forwarded to the eligible injured person if requested; and

3.  file a proof of loss if requested by us in the form required by us.

### Other Insurance

If there is other similar insurance on a loss covered by this Part, we will pay our proportionate share as our limits bear to the total limits of all applicable similar insurance. Insurance afforded under this Part for a vehicle you do not own is excess over any other applicable similar insurance.

### Arbitration

If we and you do not agree:

1.  whether you are legally entitled to recover damages; or

2.  as to the amount of damages which are recoverable by you;

from the owner or operator of an uninsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

Each party will:

1.  pay the expenses it incurs; and

2.  bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the insured person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1.  whether you are legally entitled to recover damages; and

2.  the amount of damage. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your insured car is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

### Additional Duty

A person seeking Uninsured Motorists Coverage must:

1.  Promptly notify us in writing, by certified mail, of a tentative settlement between you and the insurer of the uninsured motor vehicle;

2.  Allow us 60 days from the receipt of the notification to send to you a written refusal to consent to acceptance of the settlement offer; and

3.  Allow us 30 days after the written refusal to consent to acceptance of the settlement offer to advance payment to you in an amount equal to the tentative settlement offer to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle.

### Our right to recover payment

Our rights do not apply if we:

1.  Have been given prompt written notice of a tentative settlement, by

certified mail, between you and the insurer of an uninsured motor vehicle; and

2.  Fail to send you a written refusal to consent to acceptance of the settlement offer within 60 days after receipt of the notification.

If we advance payment to you in an amount equal to the tentative settlement within 30 days after a written refusal to consent to acceptance of the settlement offer:

1.  That payment will be separate from any amount you are entitled to recover under the provisions of Uninsured Motorists Coverage; and

2.  We also have a right to recover the advance payment.

---

# Part IV - Car Damage
---

## Coverage D - Car Damage Coverage

We will pay for loss to your insured car:

1.  Caused by collision (Coverage D-1), only if the declarations indicate that collision coverage is provided less the deductible you have chosen, or

2.  Not caused by collision (Coverage D-2), only if the declarations indicate coverage is provided, less any applicable deductibles shown in the declarations. The deductible shall not apply to loss caused by a collision of your insured car with another vehicle insured by us if the other vehicle is not owned by you, a relative or any other person living in your household.

## Loss settlement

We may pay the loss in money or repair or replace damaged or stolen property in the vehicle. We may pay the loss in money or repair or replace the damaged or stolen vehicle. We may, at any time before the loss is paid or the property is replaced, return at our expense, any stolen property either to you or to the address shown in the declarations, with payment for any resulting damage. We may keep all or part of the property at the agreed or appraised value. We may pay you or anyone who is legally entitled to be paid for the loss.

## Additional definitions used in this part only

As used in this Part:

Collision means collision of your insured car with another object or upset of your insured car. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, colliding with a bird or animal, or breakage of glass is not loss caused by collision. If breakage of glass results from a collision, you may elect to have it treated as loss caused by collision.

Loss means direct and accidental loss of or damage to your insured car, including its equipment.

Such equipment must be:

a)  Furnished as standard original equipment by the manufacturer of the car, or

b)  Permanently attached by fasteners through holes in your insured car.

## Additional payments

1.  We will pay for transportation costs if your insured car covered by this Part is stolen. Transportation costs shall not exceed $16 per day. The payment period begins 48 hours after you tell us of the theft and notify the police. The period ends when:



a) we pay the loss,

b) the car is returned to use; or

c) we have paid $400; whichever occurs first.

2. We will pay for loss to robes, wearing apparel and other personal effects if they are your property or of a relative if the effects are in or upon your insured car. This includes loss by theft from your car, provided there are visible marks of entry.

3. We will pay salvage charges for which you become legally liable because of transporting your insured car.

4. We will pay you up to $10 for the cost of substitute transportation in traveling from the place of the loss to your intended destination.

5. We will pay you for your reasonable and necessary additional living expenses if your insured car is disabled from a loss. This benefit applies if we cover your insured car for loss caused by collision (Coverage D-1) and not caused by collision (Coverage D-2) under this policy. The loss must occur more than 100 miles from the place of principal garaging as stated in the declarations. We'll pay up to $75 per day, not to exceed $300 per policy period.

## Exclusions

We do not cover loss:

1. To your insured car while used to carry persons or property for a charge. This exclusion does not apply to shared-expense car pools.

2. Caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation or radioactive contamination, or any consequence of any of these.

3. To sound reproducing equipment including, but not limited to radios, stereos, tape decks or compact disc players not permanently installed by fasteners through holes in your insured car or to more than one tape, disc, record, or similar item used with sound equipment.

4. To sound receiving or transmitting equipment including, but not limited to citizens band radios, two-way mobile radios, telephones, scanning monitor receivers, television sets, or their accessories or antennas. Coverage does apply for that equipment when permanently installed in the dash or opening provided by the manufacturer for installation of a radio using fasteners through holes in your insured car.

5. To a camper body or trailer owned by you or a relative and not described in the declarations. Coverage does apply to a camper body or trailer ownership of which you acquire during the policy period if you ask us to insure it within 30 days after you acquire it and you pay any additional premium.

6. To TV antennas, awnings, cabanas, or equipment designed to provide additional living facilities. Coverage does not apply to any equipment or accessories contained in motorhomes, camper units or trailers unless they're built in and form a permanent part of the vehicle.

7. Resulting from wear and tear, freezing, mechanical or electrical breakdown or failure, or road damage to tires, unless it results from the total theft of your insured car.

8. To a vehicle not owned by you when used in an auto business.

9. To equipment designed or used for the detection or location of radar.

10. To your insured car used in preparation for any racing, speed, demolition or stunting contest or activity, or used in the event itself.

## Limits of liability

Our limit of liability for loss shall not exceed:

1. The lesser of:

   a) the actual cash value of the stolen or damaged property; or

   b) the amount necessary to repair or replace the property.

2. $500 for a trailer not owned by you or a relative.

3. $200 for loss to personal effects arising out of one occurrence.

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## Mexican collision coverage

If Collision coverage (Coverage D-1) is indicated on the declarations, it shall be provided by your car policy if you are involved in an accident occurring within Mexico.

## Appraisal

you or we may demand appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court having jurisdiction, will select an umpire to decide any difference. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the amount payable. We do not waive any of our rights under this policy by agreeing to an appraisal.

## No benefit to bailee

This insurance shall not in any way, directly or indirectly, benefit any person or organization caring for or handling property for a fee.

## Other insurance

If there is other applicable similar insurance on a loss covered by this Part, we will pay only that proportion of the loss that our limit of liability bears to the total limits of all applicable similar insurance. Insurance afforded under this Part for a vehicle you do not own is excess over any other applicable similar insurance.

------------------------------------------------------------

# Part V - Towing And Labor Costs

------------------------------------------------------------

## Coverage E - Towing and Labor Costs Coverage

We agree to pay towing and labor costs you incur each time your insured car is disabled up to the limit shown in the declarations. The labor must be performed at the place of disablement.

------------------------------------------------------------

# Part VI - Reimbursement Of Auto Rental Expense

------------------------------------------------------------

## Coverage F - Reimbursement of Auto Rental Expense

We agree to reimburse you for expenses you incur in renting a substitute car when there is a loss to your insured car described in the declarations which:

1. results in its withdrawal from normal use for more than 24 hours; and

2. the loss is covered under Part IV of this policy.

This coverage does not apply in the case of the total theft of a car for which transportation expense reimbursement is covered under the policy.



7

We will pay up to $16 per day up to that period of time reasonably required to repair or replace the car, but no more than $400 maximum. This coverage does not pay for any mileage charges.

---

# Part VII - General Provisions

---

## Policy period, territory

This policy applies only to accidents, occurrences, and loss during the policy period shown in the declarations while **your insured car** is within the United States, its territories or possessions, Puerto Rico, or Canada, or between their ports.

## Premium

The premium for this policy is computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded.

## Changes

This policy and the declarations include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change. When **we** broaden **your** coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in **your state**.

## Two or more cars insured

With respect to an accident or occurrence to which this and any other auto policy **we** issue to **you** applies, the total limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## Suit against us

**We** may not be sued unless there is full compliance with all the terms of this policy. **We** may not be sued under the Liability Coverage until the obligation of an **insured person** to pay is finally determined either by judgment against that person after actual trial or by written agreement of that person, the claimant and **us**. No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

## Our recovery rights

In the event of a payment under this policy, **we** are entitled to all the rights of recovery that the person or organization to whom payment was made has against another. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights and do nothing after loss to harm **our** rights.

When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for **us** and reimbursed to **us** to the extent of **our** payment.

## Assignment

Interest in this policy may not be assigned without **our** written consent. If the Policyholder named in the declarations or the **spouse** of the Policyholder residing in the same household dies, the policy will cover until the end of the policy period:

1.  The surviving spouse, if a resident in the same household at the time of death.

2.  The legal representative of the deceased person while acting within the scope of duties of a legal representative.

3.  Any person having proper custody of **your insured car** until a legal representative is appointed.

## Bankruptcy

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

## Fraud

**We** do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## Cancellation of this policy

**You** may cancel this policy by returning it to **us** or by notifying **us** in writing of the date to cancel, which must be later than the date **you** mail or deliver it to **us**. **We** may waive these requirements by confirming the date and time of cancellation to **you** in writing.

**We** may cancel by mailing notice of cancellation to **you** at the address shown in the declarations or by delivering the notice:

1.  not less than 10 days prior to the effective date of cancellation for nonpayment of premium.

2.  not less than 45 days prior to the effective date of cancellation for any other circumstance.

If this policy has been in effect for 60 days or is a renewal policy, **we** may cancel only:

1.  for nonpayment of premium; or

2.  for suspension or revocation of **your** driver's license or that of any other operator who either lives in **your** household or customarily operates **your insured car**. The suspension or revocation must have taken place during the policy period or since the original effective date of the policy if it was written for more than one year.

3.  if the policy was obtained through material misrepresentation.

## Nonrenewal of this policy

**We** will mail to **you** at the address shown in the declarations or deliver to **you** notice of nonrenewal not less than 45 days before the end of the policy period, if **we** decide not to renew this policy.

## Automatic termination

This policy will automatically terminate at the end of the policy period if **you** or **your** representative do not accept **our** offer to renew it. **Your** failure to pay the required renewal premium means that **you** have declined **our** offer.

## Other provisions

If other insurance is obtained on **your insured car**, similar insurance afforded under this policy for that car will cease on the effective date of the other insurance.

If different requirements for cancellation and nonrenewal or termination of policies are applicable because of the laws of **your** state, **we** will comply with those requirements.

Proof of mailing a notice is proof of notice.

Upon cancellation **you** may be entitled to a premium refund; if so, **we** will send it to **you** but the making or offer of a refund is not a condition of cancellation. If **you** cancel, the refund will be computed in accordardance



with our manuals. The effective date of cancellation stated in a notice is the end of the policy period.

Always return your license plates and registration cards to the Motor vehicle Administration BEFORE cancelling any motor vehicle liability insurance policy to avoid penalty fees and suspension of your current and future registration privileges.

---

# Part VIII - Endorsements

---

The following endorsements apply to this policy only if they appear on the declarations page with an additional premium, where applicable.

---

# Extended Liability Coverage

---

We agree that Part I of the policy is amended as follows with respect to the individual shown in the declarations for a car or trailer not owned by that individual or a member of the same household:

1. Exclusions 1 and 9 do not apply.

2. Exclusion 5 is amended to read:

   5. Bodily injury or property damage resulting from the ownership, maintenance or use of a vehicle by a person, other than an individual shown in the declarations under Extended Liability Coverage, while engaged in a business other than an auto business.

---

# Insurance For Sound Receiving Or Transmitting Equipment

---

We agree that with respect to the cars described in the declarations, exclusion (4) of Part IV of the policy is deleted and coverage will apply for loss to sound receiving or transmitting equipment designed for use as citizens band radios, two-way mobile radios, telephones, scanning monitor receivers, television sets, and their accessories or antennas.

This insurance applies only if the equipment is owned by you or a relative and is permanently installed in your insured car at the time of the loss.

Our limit of liability for each loss to which this insurance applies shall be the actual cash value of the equipment at the time of loss but no more than the limit shown in the declarations.

---

This policy is signed by the President and Secretary of the insurance Company.


President                                            Secretary

*EXHIBIT NO. 2*



**Ameriprise**
*Auto & Home Insurance*

December 7, 2005

3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD 20902-5808

**RE:    OUR CLAIM NO.:   601891P104**
**POLICY NO:        AX00221732**
**OUR INSURED:      ROY KRIEGER**
**DATE OF LOSS:     MARCH 5, 2005**

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your Affidavit of Fire with regard to the fire damage sustained to your vehicle. Without this document, we are unable to finalize your claim.

If we do not have a response from you by December 30, 2005, your claim will be closed without payment. The damaged vehicle will be delivered to your residence.

Please contact our office with any questions or concerns. Please reference your claim number when calling. Thank you.

Sincerely,

Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246  ext 5854
1.920.330.5508 fax



Ameriprise
*Auto & Home Insurance*

3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

November 13, 2005

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD 20902-5808

**RE:    OUR CLAIM NO.:   601891P104**
**        POLICY NO:       AX00221732**
**        OUR INSURED:     ROY KRIEGER**
**        DATE OF LOSS:    MARCH 5, 2005**

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your
Affidavit of Fire with regard to the fire damage sustained to your vehicle. Without this
document, we are unable to finalize your claim.

Please contact our office with any questions or concerns. Please reference your claim
number when calling. Thank you.

Sincerely,

Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246 ext 5854
1.920.330.5508 fax



**Ameriprise**
*Auto & Home Insurance*

October 13, 2005

3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD 20902-5808

RE:   **OUR CLAIM NO.:   601891P104**
      **POLICY NO:        AX00221732**
      **OUR INSURED:      ROY KRIEGER**
      **DATE OF LOSS:     MARCH 5, 2005**

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your
Affidavit of Fire with regard to the fire damage sustained to your vehicle. Without this
document, we are unable to finalize your claim.

Please contact our office with any questions or concerns. Please reference your claim
number when calling. Thank you.

Sincerely,

Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246  ext 5854
1.920.330.5508 fax



**Ameriprise**
*Auto & Home Insurance*

September 14, 2005

3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD 20902-5808

**RE:    OUR CLAIM NO.:   601891P104
        POLICY NO:       AX00221732
        OUR INSURED:     ROY KRIEGER
        DATE OF LOSS:    MARCH 5, 2005**

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your
Affidavit of Fire with regard to the fire damage sustained to your vehicle. Without this
document, we are unable to finalize your claim.

Please contact our office with any questions or concerns. Please reference your claim
number when calling. Thank you.

Sincerely,

Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246 ext 5854
1.920.330.5508 fax



**Ameriprise**
*Auto & Home Insurance*

August 19, 2005

3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD  20902-5808


**RE:    OUR CLAIM NO.:    601891P104**
**          POLICY NO:         AX00221732**
**          OUR INSURED:    ROY KRIEGER**
**          DATE OF LOSS:    MARCH 5, 2005**

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your Affidavit of Fire with regard to the fire damage sustained to your vehicle.  Without this document, we are unable to finalize your claim.

Please contact our office with any questions or concerns.  Please reference your claim number when calling.  Thank you.

Sincerely,


Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246  ext 5854
1.920.330.5508 fax

**The American Express**
**Property Casualty companies**
3500 Packerland Drive
De Pere, WI 54115-9070

July 19, 2005

**AMEX Assurance Company**
**IDS Property Casualty**
**Insurance Company**

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD  20902-5808

RE:    OUR CLAIM NO.:    601891P104
       OUR INSURED:      ROY KRIEGER
       DATE OF LOSS:     MARCH 5, 2005

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is we have not received your Affidavit of Fire with regard to the fire damage sustained to your vehicle. Without this document, we are unable to finalize your claim.

Please contact our office with any questions or concerns. Please reference your claim number when calling. Thank you.

Sincerely,
*Scott Seehafer*
Scott Seehafer
Total Loss Adjuster
AMEX Assurance Company
1.800.872.5246  ext 5854
1.920.330.5508 fax
CLAIMS\2103\601891p104



**The American Express
Property Casualty companies**
3500 Packerland Drive
De Pere, WI 54115-9070

**AMEX Assurance Company
IDS Property Casualty
Insurance Company**

June 22, 2005

ROY KRIEGER
10362 CASTLEHEDGE TERRACE
SILVER SPRING MD 20902

RE:    OUR CLAIM NO.:    601891P104
       OUR INSURED:      ROY KRIEGER
       DATE OF LOSS:     MARCH 5, 2005

Dear Mr. Krieger:

This letter is to advise the reason your claim is not settled is our investigation is still ongoing. We
have also not received the Affidavit of Fire and the fire department report with regard to the fire
damage sustained to your vehicle.

Sincerely,

*Scott Seehafer*
Scott Seehafer
Total Loss Adjuster
Amex Assurance Company
1.800.872.5246 ext 5854
1.920.330.5508 fax
CLAIMS\2103\601891p104

**AMERICAN EXPRESS** ®

The American Express
Property Casualty companies
3500 Packerland Drive
De Pere, WI 54115-9070

AMEX Assurance Company
IDS Property Casualty
Insurance Company

MARCH 8, 2005

ROY KRIEGER
10362 CASTLEHEDGE TER
SILVER SPRING MD 20902-5808

RE:    OUR CLAIM NO.:        **601891**
       OUR INSURED:          **ROY KRIEGER**
       DATE OF LOSS:         **3-5-05**

Dear Roy:

We need to have detailed information regarding your vehicle and the loss in order to properly process your claim and make a fair evaluation of your loss.

We have enclosed an Affidavit of Fire form for you to fill out. Please complete the form, have it notarized, and return it to us as soon as possible along with the police report in the enclosed postage-paid envelope. Any delay in processing your affidavit may cause a delay in processing your claim. All questions must be answered on the form. If a specific question does not apply, please indicate N/A (not applicable).

You are entitled to reimbursement for transportation costs. These costs shall not exceed $20.00 per day. The payment period begins 48 hours after you tell us of the theft and notify the police. The period ends when:

         a) we pay the loss
         b) the car is returned to use; or
         c) we have paid $600.00; whichever occurs first.

Please call us with any questions at the phone number listed below and refer to our claim number when calling.

Sincerely,

Scott Seehafer
Amex Assurance Company
800.872.5246 ext 5854

3500 Packerland Drive
De Pere, WI 54115-9070

Ameriprise Insurance
Company
IDS Property Casualty
Insurance Company

# Ameriprise
*Auto & Home Insurance*

## AFFIDAVIT OF FIRE

Insured: _____    Claim Number: _____

**Instructions:**
- **Print all answers in ink**
- **Every question must be answered – if a question is not applicable, please enter N/A**
- **Sign the last page**
- **Have completed form notarized**
- **Return the form and a copy of the police report by U.S. mail in postage-paid envelope**

Your name: _____ Birth date: _____

Spouse's name: _____ Birth date: _____

Your drivers license no.: _____ Date issued: _____

Home address: _____
    No.            Street            Apt.    City            State        Zip

How long at this address? _____

Prior address: _____
    No.            Street            Apt.    City            State        Zip

Occupation: _____ Employer: _____

Business address: _____
    No.            Street            Apt.    City            State        Zip

How long at current business address? _____

Home phone: _____ Business phone: _____
    Area Code    No.                            Area Code    No.

Are either phones an answering service or device? _____ Please note which phone to contact you at

and the best time to call: _____

Vehicle year: _____ Make: _____ Model: _____

Vehicle Identification No. (VIN) : _____ Lic. No.: _____

Color (exterior): _____ Color (interior): _____ Mileage (approx.): _____ Amount of gas in tank: _____

Name and address of registered owner (exactly as printed on registration): _____

_____

Name and address of legal owner (exactly as printed on registration): _____

_____

If not legal owner, where is title? _____

Date vehicle purchased: _____ Purchase price: _____ New/Used/Demo: _____

Name and address of dealer or person vehicle was purchased from: _____

Is there a loan on the vehicle? _____ Loan account #? _____

If so, name and address of lienholder/finance co.:_____Phone #? _____

Approx. loan balance:_____ Monthly payments:_____ Are you up-to-date on your payments?_____

Next payment due:_____ Any other insurance on this vehicle other than IDS Property

Casualty Ins. Co. or Ameriprise Insurance Co.?_____If yes, list carrier and policy #:_____

Who was prior insurance company?_____ Policy #: _____

Was vehicle ever repossessed? _____ If yes, give details:_____

_____

Was vehicle a rebuilt wreck or strip?_____ If yes, name and address of rebuilder:_____

_____

If vehicle was a rebuilt wreck or rebuilt strip, was the vehicle completely rebuilt and serviceable at the time of

purchase?_____ At the time of application for insurance?_____ If not, please explain:

_____

Where is vehicle normally serviced? _____

When last serviced?_____ Any major repairs since purchased?_____ If yes,

please describe:_____

Name and address of repair shop or mechanic:_____

_____

Any problems with auto? _____

Was vehicle customized? If yes, describe in detail:_____

_____

_____

List any markings that would aid in the identification of the vehicle, such as decals, dents, scratches, tears or

burns in upholstery, etc.:_____

_____

_____

Describe any existing damage to vehicle prior to fire:_____

_____

Where did fire occur (exact address)? _____

_____

Date and time of fire:_____ Who discovered fire?_____

Was vehicle locked?_____ Who had keys?_____

How many sets of keys?_____ Who else has set?_____

List names and address of all persons who have permission to drive vehicle:

_____

_____

_____

Have they been contacted to see if they have vehicle?_____ Has fire been reported to the police?_____

Where?_____

Division:_____ Police report #:_____

Date and time reported to police:_____

Where is vehicle normally garaged (e.g., residence garage, street, driveway, carport, etc.)?_____

Name and address of last driver:_____

_____

Where was owner of vehicle at time of fire:_____

_____

Name and addresses of all passengers in vehicle when parked prior to fire:_____

_____

_____

_____

Name and address of person who took you home after the fire:_____

_____

In your own words, briefly explain the circumstances of the fire:_____

_____

_____

_____

_____

Was this vehicle ever burnt or stolen before?_____ If yes, describe details, including year, make, date

of the theft or fire, location, police agency, and prior insurance carrier:_____

_____

_____

Have you or anyone in your household ever had a vehicle burnt or stolen before?_____

If yes, describe details, including year, make, date of theft or fire, location, police agency, insurance carrier, etc.:_____

_____

_____

What do you estimate to be the fair market value of your vehicle?   $_____

For how much are you making a claim against IDS Property Casualty Insurance Company/Ameriprise

Insurance Company?   $_____

I (we) affirm that the statements herein made are true.

_____
                                                                                    Insured

Subscribed and sworn to before me

This_____ day of _____, _____

_____
Notary Public

My commission expires: _____

*EXHIBIT NO. 3*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PALEOS & KRIEGER, P.C.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 000384-** |
| **v.** | § | **RBW** |
| | § | |
| **PORSCHE CARS NORTH AMERICA** | § | |
| **and** | § | |
| **AMERIPRISE HOME and AUTO** | § | |
| **INSURANCE** | § | |
| | § | |
| **Defendants** | § | |

## AFFIDAVIT OF TIMOTHY J. REICHWALD

Comes now your Affiant, Timothy J. Reichwald, and upon personal knowledge, states:

1.)    I am over the age of 18 years, competent to testify and have personal knowledge of the facts and matters set forth herein.

2.)    I am an attorney and am employed by the Claims Department of AMEX Assurance Co. (AMEX). I am admitted to practice law in the States of Wisconsin and Iowa.

3.)    The documents which are marked as **Exhibit 2** and **Exhibit 4** to AMEX's Memorandum of Points and Authorities in Support of Motion to Dismiss or Alternatively for Summary Judgment or to Transfer, are records kept in the ordinary course of business of AMEX. I am the custodian of those records.

1

4.)     AMEX has never received from Mr. Krieger a completed written proof of loss, despite having requested Mr. Krieger by correspondence dated March 8, 2005 to complete, have notarized and return to AMEX the Affidavit of Fire which accompanied that correspondence to him.  Mr. Krieger never responded as requested to any of the letters which were sent to him requesting the completed proof of loss, which letters are attached at **Exhibit 2** to AMEX's Memorandum of Points and Authorities.

**I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING ARE TRUE AND CORRECT.**

Date:  _July 21, 2008_
_____
Timothy J. Reichwald

_Theresa A. Goodletson_

2

*EXHIBIT NO. 4*

Date:    3/11/2005 04:14 PM
Supplement:    0

**INDEPENDENT INSURANCE APPRAISAL**
BETHESDA, MD 20814
(240) 418-5869
Fax: (301) 718-9358

**A P P R A I S A L   R E P O R T**

**DAMAGE ASSESSED BY: KEVIN BUHLMAN**

| | | |
|---|---|---|
| **FILE NUMBER:** | 601891-01 | **ASSIGNMENT DATE:** 3/ 7/2005 |
| **CLAIM NUMBER:** | 601891-01 | **CONTACT DATE:** 3/ 7/2005 |
| **DATE OF LOSS:** | 3/ 5/2005 | **INSPECTION DATE:** None |
| **TYPE OF LOSS:** | | **REC'D DATE:** 3/ 7/2005 |
| **APPRAISED FOR:** | SCOTT SEEHAFER | |

Point(s) of Impact
2 Right Front Side (P)

**INSURED:**    JAMIE KRIEGER          **CLAIMANT:** None
10362 CASTLEHEDGE TER
SILVER SPRING, MD 20902
(301) 681-7074
(202) 454-2835

**OWNER:**    JAMIE KRIEGER          **BODY SHOP:** None
10362 CASTLEHEDGE TER
SILVER SPRING, MD 20902
(301) 681-7074
(202) 454-2835

**INSPECTION SITE:** IAA
P#301-419-2865
LAUREL, MD

**QUALITY RECYCLED PARTS:**    No
**AFTERMARKET NEW PARTS:**    No
**VEHICLE DRIVEABLE:**    No

Prior Damage
NONE NOTED

Comments:
IV WITH HEAVY INTERIOR BURN DAMAGES.
OPEN ITEMS W/ ALL SEATS, CARPET, WIREHARNESS/ELECTRICAL SYSTEM.
ROOF OVERHEAD CONSOLE, ALL SPEAKERS.
NO AM OR LKQ PARTS AVAILABLE.
UNABLE TO GET ODOMETER READING DUE TO NO VEHICLE POWER.
INTERIOR W/ INTENSE BURN ODOR AS WELL.
IV CURRENTLY AT SALAVGE YARD.

| | | | | | |
|---|---|---|---|---|---|
| **COMPARISON ESTIMATE:** | 0.00 | **TOWING:** | 0.00 | **ACTUAL CASH VALUE:** | 52,000.00 |
| **APPRAISER ESTIMATE:** | 19,285.37 | **STORAGE:** | 0.00 | **SALVAGE VALUE:** | 0.00 |
| **AGREED UPON AMOUNT:** | 0.00 | **DEDUCTIBLE:** | UNKNOWN | **SETTLEMENT:** | 0.00 |
| | | | | **REPAIR VS. ACV:** | 0.00 |
| **DRAFT/CHECK NUMBER:** | 0 | | | **ESTIMATE FEE:** | 0.00 |
| **DRAFT/CHECK AMOUNT:** | 0.00 | | | **TRAVEL EXPENSE:** | 0.00 |
| **DATE ISSUED:** | None | | | **PHOTO EXPENSE:** | 0.00 |
| | | | | **MISC EXPENSE:** | 0.00 |
| | | | | **TOTAL CHARGES:** | 0.00 |

UltraMate is a Trademark of Mitchell International
Copyright (C) 1994 - 2003 Mitchell International
All Rights Reserved

| | | | |
|---|---|---|---|
| | Date: | 3/11/2005 04:17 PM |
| | Estimate ID: | 601891-01 |
| | Estimate Version: | 0 |
| | Preliminary | |
| | Profile ID: | CUSTOMIZED |

# INDEPENDENT INSURANCE APPRAISAL

**BETHESDA, MD  20814**
**(240) 418-5869**
**Fax: (301) 718-9358**

Damage Assessed By:   KEVIN BUHLMAN                    Appraised For:   SCOTT SEEHAFER

| | | |
|---|---|---|
| Condition Code: | Good | |
| Date of Loss: | 3/ 5/2005 | Arrival Date:   3/11/2005 |
| Contact Date: | 3/ 7/2005 | Accident Date:   3/ 5/2005 |
| Deductible: | UNKNOWN | |
| File Number: | 601891-01 | |
| Policy No: | AX00221732 | Claim Number:   601891-01 |

Insured:   **JAMIE KRIEGER**
Address:   **10362 CASTLEHEDGE TER SILVER SPRING, MD 20902**
Telephone:   Work Phone:   (202) 454-2835          Home Phone:   (301) 681-7074

Mitchell Service:   910248

| | | |
|---|---|---|
| Description: | **2004 Porsche Cayenne S** | |
| Body Style: | **4D Ut** | Drive Train:   4.5L Inj 8 Cyl AWD |
| VIN: | **WP1AB29P54LA70221** | License:   169M662  MD |
| OEM/ALT: | **A** | Search Code:   340 |
| Color: | **BLUE** | |
| Options: | **ALUM/ALLOY WHEELS, AIR CONDITIONING, POWER WINDOWS, POWER DOOR LOCKS** | |
| | **POWER PASSENGER SEAT, CRUISE CONTROL, ELECTRIC DEFOGGER, LEATHER SEATS** | |
| | **POWER SUNROOF, DUAL A/C, AUTOMATIC TRANSMISSION, PREMIUM SOUND SYS.** | |
| | **POWER DRIVER SEAT, AM-FM STEREO/CDPLAYER(SINGLE)** | |

| Line Item | Entry Number | Labor Type | Operation | Line Item Description | Part Type/ Part Number | Dollar Amount | Labor Units |
|---|---|---|---|---|---|---|---|
| 1 | 000458 | BDY | REPAIR | R FENDER PANEL | Existing | | 3.0* # |
| 2 | AUTO | REF | REFINISH | R FENDER OUTSIDE | | C | 2.1 |
| 3 | 000695 | MCH | REMOVE/REPLACE | AIR BAG MODULE-DRIVER FRONT          -M | 955 803 075 30 5Z3 | 750.86 | 0.5 |
| 4 | 000697 | MCH | REMOVE/REPLACE | AIR BAG MODULE-PASSENGER FRONT     -M | N.A. | 750.00 * | INC # |
| 5 | 001912 | MCH | REMOVE/REPLACE | NAVIGATION DISPLAY ASSY             -M | 955 642 204 05 | 3,411.80 | 1.1 |
| 6 | 000731 | GLS | REMOVE/REPLACE | W/SHIELD GLASS | 955 541 111 04 | 457.24 | 3.2 # |
| 7 | 000759 | BDY | REMOVE/REPLACE | W/SHIELD REAR VIEW MIRROR | 955 731 514 00 01C | 275.82 | INC |
| 8 | 000750 | BDY | REMOVE/REPLACE | R W/SHIELD SUN VISOR | 955 731 138 02 6L2 | 115.43 | INC |
| 9 | 000751 | BDY | REMOVE/REPLACE | L W/SHIELD SUN VISOR | 955 731 137 02 6L2 | 115.43 | INC |
| 10 | 001952 | MCH | REMOVE/REPLACE | INST PANEL                          -M | 955 552 101 03 A11 | 1,143.70 | 7.4 # |
| 11 | 001956 | BDY | REMOVE/REPLACE | INST PANEL CROSSMEMBER | 955 552 061 00 | 316.75 | 1.0 # |
| 12 | 001961 | BDY | REMOVE/REPLACE | R INST PANEL TRIM | 955 552 186 00 A03 | 89.32 | INC |
| 13 | 001962 | BDY | REMOVE/REPLACE | L INST PANEL TRIM | 955 552 185 00 A03 | 89.32 | INC |
| 14 | 001965 | BDY | REMOVE/REPLACE | R INST PANEL SPEAKER GRILLE | 955 552 794 00 A03 | 25.85 | INC |
| 15 | 001966 | BDY | REMOVE/REPLACE | L INST PANEL SPEAKER GRILLE | 955 552 793 00 A03 | 25.85 | INC |
| 16 | 001968 | BDY | REMOVE/REPLACE | CTR INST PANEL TRIM | 955 552 655 00 A03 | d25.44 | INC |
| 17 | 001973 | BDY | REMOVE/REPLACE | R INST PANEL SIDE COVER | 955 552 176 00 A03 | 37.13 | INC |
| 18 | 001974 | BDY | REMOVE/REPLACE | L INST PANEL SIDE COVER | 955 552 175 00 A03 | 37.13 | INC |
| 19 | 001986 | BDY | REMOVE/REPLACE | INST PANEL COVER | 955 552 295 01 A11 | 136.21 | INC |
| 20 | 001991 | BDY | REMOVE/REPLACE | INST PANEL TRIM PANEL | 955 552 065 00 6N3 | 22.31 | |
| 21 | 001994 | BDY | REMOVE/REPLACE | LWR INST PANEL COVER | 955 552 567 00 A11 | 247.59 | INC |
| 22 | 001996 | BDY | REMOVE/REPLACE | R OTR INST PANEL VENT | 955 552 228 01 A03 | 41.09 | INC |
| 23 | 001997 | BDY | REMOVE/REPLACE | L OTR INST PANEL VENT | 955 552 225 01 A03 | 41.09 | INC |
| 24 | 002000 | BDY | REMOVE/REPLACE | INST PANEL KNEE PAD | 955 552 505 00 8YR | 286.87 | INC |
| 25 | 002010 | BDY | REMOVE/REPLACE | LWR INST PANEL TRIM PANEL | 955 552 305 01 | 44.47 | INC |
| 26 | 002018 | BDY | REMOVE/REPLACE | INST PANEL MLDG | ORDER FROM DEALER | 86.68 | |
| 27 | 002020 | BDY | REMOVE/REPLACE | CTR INST PANEL FINISH PANEL | 955 552 087 01 A11 | 185.70 | INC |
| 28 | 002022 | BDY | REMOVE/REPLACE | UPR INST PANEL COVER | 955 552 189 00 A03 | 89.32 | INC |
| 29 | 002031 | BDY | REMOVE/REPLACE | CTR INST PANEL MLDG | ORDER FROM DEALER | 26.56 | |

**ESTIMATE RECALL NUMBER:**  3/11/2005 16:17:34  601891-01

| | | |
|---|---|---|
| | UltraMate is a Trademark of Mitchell International | |
| **Mitchell Data Version:** | JAN_05_A | Copyright (C) 1994 - 2003 Mitchell International |
| **UltraMate Version:** | 5.0.031 | All Rights Reserved |

Page   1   of   3

| | | | | | Date: | 3/11/2005 04:17 PM |
|---|---|---|---|---|---|---|
| | | | | | Estimate ID: | 601891-01 |
| | | | | | Estimate Version: | 0 |
| | | | | | Preliminary | |
| | | | | | Profile ID: | CUSTOMIZED |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30 | 002032 | BDY | REMOVE/REPLACE | CTR INST PANEL VENT | 955 552 263 01 A03 | 72.28 | INC |
| 31 | 002043 | BDY | REMOVE/REPLACE | INST PANEL GLOVE BOX COVER | 955 552 121 00 8YR | 162.87 | INC # |
| 32 | 002045 | BDY | REMOVE/REPLACE | INST PANEL GLOVE BOX | 955 552 118 00 A03 | 198.07 | INC |
| 33 | 002104 | BDY | REMOVE/REPLACE | INST PANEL RADIO | N.A. | 600.00 * | INC |
| 34 | 002124 | BDY | REMOVE/REPLACE | INST PANEL SPEAKER | 955 641 230 00 | 9.38 | |
| 35 | 001947 | BDY | REMOVE/REPLACE | CTR CONSOLE ASSY | 955 552 211 01 4P1 | d1420.42 | 0.2 |
| 36 | 001969 | BDY | REMOVE/REPLACE | CTR CONSOLE SHIFTER TRIM | ORDER FROM DEALER | 420.89 | INC |
| 37 | 001982 | BDY | REMOVE/REPLACE | CTR CONSOLE PLATE | 955 552 261 01 62W | 185.70 | |
| 38 | 001983 | BDY | REMOVE/REPLACE | CTR CONSOLE MAT | 955 552 328 00 | 11.68 | |
| 39 | 001984 | BDY | REMOVE/REPLACE | CTR CONSOLE TRIM | 955 552 338 00 A03 | 19.19 | 0.3 |
| 40 | 001989 | BDY | REMOVE/REPLACE | CTR CONSOLE CUP HOLDER | 955 552 286 02 A03 | 146.85 | |
| 41 | 002099 | BDY | REMOVE/REPLACE | R UPR CTR PILLAR TRIM PANEL | 955 555 188 02 QGA | 229.94 | INC |
| 42 | 002100 | BDY | REMOVE/REPLACE | L UPR CTR PILLAR TRIM PANEL | 955 555 187 02 QGA | 229.94 | INC |
| 43 | 002107 | BDY | REMOVE/REPLACE | R LWR CTR PILLAR TRIM PANEL | 955 551 380 01 01C | 104.00 | 0.6 # |
| 44 | 002108 | BDY | REMOVE/REPLACE | L LWR CTR PILLAR TRIM PANEL | 955 551 379 01 01C | 104.00 | 0.6 # |
| 45 | 000101 | BDY | REPAIR | R FRT DOOR SHELL | Existing | | 3.0* # |
| 46 | AUTO | REF | REFINISH | R FRT DOOR OUTSIDE | | C | 1.7 |
| 47 | 002232 | BDY | REMOVE/INSTALL | R FRT REAR VIEW MIRROR | | | INC # |
| 48 | 002236 | BDY | REMOVE/INSTALL | R FRT OTR BELT MOULDING | | | 0.2 # |
| 49 | 002242 | BDY | REMOVE/INSTALL | R FRT DOOR TRIM PANEL | | | INC |
| 50 | 001372 | BDY | REMOVE/REPLACE | R FRT DOOR TRIM PANEL ASSY | 955 555 134 02 PBN | 618.98 | 0.1 |
| 51 | 001373 | BDY | REMOVE/REPLACE | L FRT DOOR TRIM PANEL ASSY | 955 555 133 02 PBN | 618.98 | 0.7 |
| 52 | 001411 | BDY | REMOVE/REPLACE | R FRT DOOR ARMREST | 955 555 234 00 4P1 | 99.03 | INC |
| 53 | 001412 | BDY | REMOVE/REPLACE | L FRT DOOR ARMREST | 955 555 233 00 4P1 | 99.03 | INC |
| 54 | 002252 | BDY | REMOVE/INSTALL | R FRT OTR DOOR HANDLE | | | 2.7 # |
| 55 | 001536 | BDY | REMOVE/REPLACE | R REAR DOOR TRIM PANEL ASSY | 955 555 160 02 PBN | 618.98 | 0.7 |
| 56 | 001537 | BDY | REMOVE/REPLACE | L REAR DOOR TRIM PANEL ASSY | 955 555 159 02 PBN | 618.98 | 0.7 |
| 57 | 001556 | BDY | REMOVE/REPLACE | R REAR DOOR ARMREST | 955 555 176 00 4P1 | 99.03 | INC |
| 58 | 001557 | BDY | REMOVE/REPLACE | L REAR DOOR ARMREST | 955 555 175 00 4P1 | 99.03 | INC |
| 59 | 002285 | BDY | REMOVE/REPLACE | ROOF HEADLINER | N.A. | 350.00 * | 5.5 |
| 60 | 002057 | BDY | REMOVE/REPLACE | REAR ROOF HEADER TRIM PANEL | 955 555 618 01 5E6 | 148.57 | 0.4 |
| 61 | 000478 | BDY | REMOVE/REPLACE | SUNROOF SUNSHADE | 955 564 024 00 5E6 | 223.08 | |
| 62 | 000193 | BDY | REMOVE/REPLACE | LWR LIFTGATE INNER TRIM PANEL | 955 555 603 01 RKS | 190.34 | 0.3 |
| 63 | 000219 | BDY | REMOVE/REPLACE | UPR LIFTGATE INNER TRIM PANEL | 955 555 685 01 5Z1 | 83.96 | 0.2 |
| 64 | 001632 | GLS | REMOVE/REPLACE | LIFTGATE GLASS | FB22063GTY | 650.00 * | INC* |
| 65 | 000056 | BDY | REMOVE/REPLACE | R REAR COMBINATION LAMP ASSEMBLY | 955 631 486 01 | 141.23 | INC |
| 66 | AUTO | BDY | OVERHAUL | REAR COVER ASSY | | | 2.6 # |
| 67 | 000013 | BDY | REMOVE/REPLACE | REAR BUMPER COVER | 955 505 411 01 G2X | 346.14 | INC # |
| 68 | AUTO | REF | REFINISH | REAR BUMPER COVER | | C | 1.8 |
| 69 | AUTO | REF | ADD'L OPR | CLEAR COAT | | | 1.5 |
| 70 | AUTO | | ADD'L COST | PAINT/MATERIALS | | 156.20 * | |
| 71 | AUTO | | ADD'L COST | HAZARDOUS WASTE DISPOSAL | | 3.00 * | |

\* - Judgement Item
\# - Labor Note Applies
d - Discontinued by the Manufacturer
C - Included in Clear Coat Calc

Prior Damage
NONE NOTED

| I. Labor Subtotals | Units | Rate | Add'l Labor Amount | Sublet Amount | Totals | | II. Part Replacement Summary | | | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| Body | 22.8 | 36.00 | 0.00 | 0.00 | 820.80 | | Taxable Parts | | | 17,795.53 |
| Refinish | 7.1 | 36.00 | 0.00 | 0.00 | 255.60 | | Sales Tax | @ | 5.000% | 889.78 |
| Glass | 3.2 | 38.00 | 0.00 | 0.00 | 115.20 | | | | | |
| Mechanical | 9.0 | 75.00 | 0.00 | 0.00 | 675.00 | | Total Replacement Parts Amount | | | 18,685.31 |
| | | | | | | | | | | |
| | Non-Taxable Labor | | | | 1,866.60 | | | | | |
| | | | | | | | | | | |
| Labor Summary | 42.1 | | | | 1,866.60 | | | | | |

ESTIMATE RECALL NUMBER:  3/11/2005 16:17:34 601891-01

| | | | |
|---|---|---|---|
| Mitchell Data Version: | JAN_05_A | Copyright (C) 1994 - 2003 Mitchell International | Page   2   of   3 |
| UltraMate Version: | 5.0.031 | All Rights Reserved | |

|  |  |
|---|---|
| Date: | 3/11/2005 04:17 PM |
| Estimate ID: | 601891-01 |
| Estimate Version: | 0 |
| Preliminary |  |
| Profile ID: | CUSTOMIZED |

| III. | Additional Costs |  |  |  | Amount | IV. | Adjustments |  | Amount |
|---|---|---|---|---|---|---|---|---|
|  | Taxable Costs |  |  |  | 159.20 |  | Customer Responsibility | 0.00 |
|  |  | Sales Tax | @ | 5.000% | 7.96 |  |  |  |
|  | **Total Additional Costs** |  |  |  | 167.16 |  |  |  |

|  |  |  |
|---|---|---|
| I. | Total Labor: | 1,866.60 |
| II. | Total Replacement Parts: | 18,685.31 |
| III. | Total Additional Costs: | 167.16 |
|  | **Gross Total:** | 20,719.07 |
|  |  |  |
| IV. | Total Adjustments: | 0.00 |
|  | Net Total: | 20,719.07 |

## This is a preliminary estimate.
## Additional changes to the estimate may be required for the actual repair.

**Point(s) of Impact**

2 Right Front Side (P)

| Insurance Co: | American Express | Inspection Site: | IAA |
|---|---|---|---|
| Telephone: | (800) 872-5248 | Address: | P#301-419-2865 |
|  |  |  | LAUREL, MD |

UltraMate is a Trademark of Mitchell International
Mitchell Data Version:      JAN_05_A       Copyright (C) 1994 - 2003 Mitchell International
UltraMate Version:            5.0.031        All Rights Reserved

*EXHIBIT NO. 5*

# APPLICATION FOR
# CERTIFICATE OF TITLE

**MVA**
Motor Vehicle Administration

**READ INSTRUCTIONS ON REVERSE SIDE**

| APPLICANT'S LAST NAME | | FIRST NAME | | MIDDLE | | SUFFIX | CO-APPLICANT'S FIRST NAME | | | MIDDLE | | SUFFIX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paleos+ Krieger PC | | | | | | | Roy Walter | | | | | Kriegel |

| APPLICANT'S SOUNDEX or FEDERAL I.D. NUMBER | DATE OF BIRTH | | | CO-APPLICANT'S SOUNDEX or DRIVER LICENSE NO./FROM 1 | | DATE OF BIRTH |
|---|---|---|---|---|---|---|
| Z975-001-920-379 | MONTH | DAY | YEAR | K626741866567 | 107 | 18 |

| APPLICANT'S STREET ADDRESS | CITY OR TOWN | COUNTY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10362 CASTLEHEDGE TERRACE SILVER SPRING MONTGOMERY MD 20903 | | | | |

IS THE VEHICLE TO BE TITLED AS JOINT TENANTS OR TENANTS BY ENTIRETIES? ☒ JOINT TENANTS ☐ TENANTS BY ENTIRETIES

## VEHICLE DESCRIPTION

| | MODEL YEAR | MAKE OF VEHICLE | MODEL NO. | VEHICLE IDENTIFICATION NUMBER | | |
|---|---|---|---|---|---|---|
| ☐ NEW VEHICLE ☒ USED VEHICLE | 2004 | PORSCHE | CAYENNE | WP1AB29U41LA70231 | | |

| ☐ TWO STAGE VEHICLE COMPLETE MAKE & YEAR FOR EACH VEHICLE | MODEL YEAR | MAKE OF VEHICLE | BODY STYLE SUV CAYENNE | TYPE OF FUEL C | # OF CYLINDERS 8 | MOTOR CARRIER # | UNIT # |
|---|---|---|---|---|---|---|---|

| ☐ TRUCK | ☐ TRUCK TRACTOR | ☐ BUS | ☐ MOTORCYCLE | | | ☐ TRAILER (SPECIFY LENGTH) | |
|---|---|---|---|---|---|---|---|
| G.V.W. | G.C.W. | AXLES | SEATS | ENGINE NO. | ENGINE SIZE (C.C.) | G.V.W. | TYPE OF TRAILER |

If this vehicle is subject to any liens or encumbrances, complete the following section(s): Attach form VR-217 for additional Lien Filings. LIEN FILING FEE $20.00 for each Lien filed. IF NOT SUBJECT TO A LIEN, WRITE WORD "NONE" BELOW.

| AMOUNT OF LIEN NONE | KIND OF LIEN (DESCRIBE) | DATE OF LIEN | NAME OF SECURED PARTY |
|---|---|---|---|

| STREET ADDRESS OF SECURED PARTY | CITY OR TOWN | STATE | ZIP CODE |
|---|---|---|---|

## PURCHASE INFORMATION FOR TAX PURPOSES – SEE INFORMATION ON REVERSE SIDE

| IF VEHICLE RECENTLY PURCHASED | MARYLAND DEALER'S CERTIFICATION | MARYLAND DEALERS ONLY |
|---|---|---|
| MD. EXCISE TAX 5% OF $ 62499.00 FULL PURCHASE PRICE | I hereby certify, under penalty of perjury, that the purchase price represents the full amount paid for this vehicle. Date of Delivery 12/31/03 DEALER'S NUMBER N U N1640 NAME OF DEALERSHIP TISCHER AUTOPARK, INC. SIGNATURE OF DEALER 12/31/03 DATE | SELLING PRICE 62499.00 SALES TAX COLLECTED 3124.95 COLL. FEE .6% OF GROSS 12.00 NET TAX REMITTED 3112.95 |
| ATTACH A NOTARIZED BILL OF SALE SIGNED BY SELLER(S) AND PURCHASER(S) | | |

Complete this section in its entirety if you qualify for an Excise Tax Credit in this State.
I/we have been resident(s) in Maryland for approximately _____
I/we last titled/registered this vehicle in _____ STATE and paid _____ % tax (if no tax paid write "NONE")

## APPLICATION FOR NEW REGISTRATION PLATES OR TRANSFER OF REGISTRATION PLATES

I/we do hereby make application for: ☒ New Registration Plates XX    ☐ Transfer of Registration Plates. Is your motor vehicle now suspended or revoked in this or any other State? ☐ Yes ☐ No

Is this vehicle to be operated for short term rental? ☐ Yes ☒ No XX    If transferring plates, complete below:    5185

TAG NO. _____ and STICKER NO. _____ The vehicle to which these plates were affixed has been sold, traded or otherwise transferred to: Name _____

Address _____
Name of Insurance Co. AMEX ASSURANCE CO.    Policy or Binder No. AX00221732
Agent or broker DIRECT    Class of Tags desired M

Federal and State law require that you state the mileage in connection with this vehicle. Failure to complete or giving a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING _____ 6 ____ NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY.

I/we certify that I/we have compared the manufacturer's vehicle identification number on the number on the vehicle and they agree and that this vehicle is subject to the liens or encumbrances indicated herein and none other. For vehicles registered over 18,000 lbs, by signing this application, I/we certify knowledge of the Federal and State Motor Carrier Safety Laws and certify this vehicle is maintained in accordance with the Maryland Preventive Maintenance Program. If making application for new plates or transfer of registration plates I/we certify under Penalty of Law that the vehicle is covered by at least the minimum amounts of insurance required by the Maryland Motor Vehicle Laws, and further certify that this vehicle will be continuously insured throughout its registration period. I/we further certify under Penalty of Perjury that the statements made herein are true and correct to the best of my knowledge, information, and belief.

Signature of Applicant _____ PRESIDENT    Printed Name of Applicant PALEOS & KRIEGER, PC
Signature of Co-Applicant _____    Printed Name of Co-Applicant ROY WALTER KRIEGER

Witness my/our Hand(s) and Seal(s) this 31st day of DECEMBER, 03

Signature of Co-Signer _____    Relationship _____
Soundex _____    Date of Birth _____

VR-005 (06-03)